[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 116.]

GOLDFUSS, ADMR., APPELLANT AND CROSS-APPELLEE, *v.* DAVIDSON, APPELLEE AND CROSS-APPELLANT.

[Cite as *Goldfuss v. Davidson*, 1997-Ohio-401.]

*Civil procedure—Plain error doctrine is not favored, but may be applied, when.*

In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. (*Yungwirth v. McAvoy* [1972], 32 Ohio St.2d 285, 61 O.O.2d 504, 291 N.E.2d 739; *Schade v. Carnegie Body Co.* [1982], 70 Ohio St.2d 207, 209, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003; and *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* [1985], 18 Ohio St.3d 268, 18 OBR 322, 480 N.E.2d 794, approved and followed.)

(Nos. 95-2014 and 95-2031—Submitted January 8, 1997—Decided June 25, 1997.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Portage County, No. 94-P-0010.

_____

{¶ 1} On May 26, 1990, a thief or thieves broke into a pole barn owned by appellee and cross-appellant, Gene A. Davidson, and stole various items. Davidson's barn contained mechanical, electrical, and gardening tools, and was located approximately one hundred feet from the Davidson home. During the police investigation of that theft Davidson told officers that if thieves returned to his premises, he would shoot them. The investigating officers advised Davidson that, under the law, he had no right to use deadly force simply to prevent the theft of property.

{¶ 2} Three days later, around midnight, Davidson's wife received a telephone call from a neighbor informing her that a car with its engine running and headlights off was parked on a road near the Davidson property. From her kitchen window, and despite darkness and pouring rain, Mrs. Davidson was able to observe the silhouettes of one or two men standing by the pole barn.

{¶ 3} When told of the men's presence, Davidson called the police and then retrieved a .38 caliber firearm from his bedroom, opened the kitchen window, and yelled at the men, who began running away from the pole barn. Davidson again yelled at the men, instructing them to stop, and fired four shots. In subsequent deposition testimony, Davidson stated that he "fired warning shots over their heads and tried to get them to stop so they could be arrested."

{¶ 4} A short while later officers found the body of Gregory G. Goldfuss, Jr., lying next to a crowbar on Davidson's lawn between the pole barn and a state route running adjacent to Davidson's property. Goldfuss had been fatally wounded by a bullet which struck him in his arm and traveled laterally, right to left, through his chest in a nearly horizontal direction.

{¶ 5} A second man, George Vanderwall, was later apprehended. He told police that he and Goldfuss had entered Davidson's property to steal power tools from Davidson's pole barn, but had been unsuccessful in attempting to break the lock on the door using the crowbar.

{¶ 6} On October 2, 1990, the decedent's father, appellant and cross-appellee Gregory L. Goldfuss, acting as administrator of his son's estate ("administrator"), initiated a wrongful death action against Davidson, seeking compensatory and punitive damages. The complaint alleged that Davidson "negligently shot and killed Gregory L. Goldfuss, Jr." The complaint did not allege that Davidson had acted willfully or wantonly.

{¶ 7} Davidson filed an answer and denied the administrator's assertions that he had been negligent. In addition, Davidson asserted that the administrator was

"precluded from recovering as alleged in the Complaint due to the assumption of risk and negligence of Gregory L. Goldfuss, Jr." The answer did not assert that the complaint failed to state a claim, nor did it assert an affirmative defense of privilege. Similarly, the answer did not assert that Davidson owed no duty of care towards Goldfuss, nor was the doctrine of primary assumption of risk otherwise raised at the pleading stage.

{¶ 8} The parties thereafter filed cross-motions for summary judgment on the issue of liability. The administrator argued that Davidson had been negligent as a matter of law when he fired his pistol killing Goldfuss; that Davidson had not shown facts supporting an inference of contributory negligence on Goldfuss's part; and that Davidson was not entitled to any defense of justification in that "[o]ne is not justified in using deadly force against a trespasser where there is no threat of bodily harm" and in that "[t]he right of citizen's arrest does not justify the use of deadly force." The administrator contended that, even if Davidson indeed had been justified in firing, he nevertheless could be held liable if he were found to have been negligent in performing a privileged act.

{¶ 9} Davidson argued that Goldfuss was contributorily negligent in that he voluntarily "assumed the risk of being shot as a matter of law" by engaging in criminal conduct. He argued that the facts before the court required the conclusion that Goldfuss's assumption of the risk precluded his estate from any recovery.

{¶ 10} The trial court denied both parties' summary judgment motions, and the case was tried to a jury. At the close of the evidence, the trial court overruled motions for directed verdict filed by both parties.

{¶ 11} The trial court then gave both counsel the opportunity to object to its proposed instructions out of the presence of the jury, and to proffer their own proposed instructions. Davidson did not object to the court's proposal to instruct the jury that the standard of care required of Davidson was ordinary care, nor did Davidson ask the court to instruct the jury that the requisite standard of care was to refrain from willful

and wanton conduct. Similarly, Davidson did not request that the jury be instructed on the doctrine of primary assumption of risk. Rather, Davidson's counsel indicated that the trial court's proposed instruction on assumption of risk was "a hundred percent correct." Davidson did object to the court's refusal to instruct the jury on the privilege to use deadly force to prevent injury to oneself or one's family (self-defense).

{¶ 12} The trial court instructed the jury that the administrator bore the burden of proving negligence in order to recover, defining "negligence" as "the failure to use ordinary care to avoid injury or damage to another." It defined "ordinary care" as "that degree of care that a reasonably careful and prudent person would use under like or similar circumstances." The court further charged the jury on the law of comparative negligence and assumption of risk, proximate cause, damages, and on the affirmative defense of privilege to defend one's property.

{¶ 13} The jury returned a general verdict for the administrator, in the amount of $200,000. The jury found (1) that Davidson was negligent in discharging the firearm that caused Goldfuss's death, (2) that Goldfuss impliedly assumed the risk of death, (3) that Goldfuss had been twenty-five percent contributorily negligent, and (4) that Davidson had been seventy-five percent negligent. The trial court entered judgment in conformance with the jury's verdict in the amount of $150,000.

{¶ 14} Davidson filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. He again contended that Goldfuss's assumption of the risk barred recovery in that "[r]easonable minds can only conclude that the assumption of risk and comparable fault on the part of Goldfuss was greater than any negligence on the part of Davidson in carelessly firing his gun." Thereafter, Davidson filed a supplemental brief in support of this motion in which he asserted, for the first time in the case, that the doctrine of primary assumption of the risk completely barred Goldfuss from recovery. The trial court denied Davidson's motion.

{¶ 15} In the court of appeals Davidson asserted that the trial court had erred in denying his motions for summary judgment, directed verdict, and judgment

4

notwithstanding the verdict, and in directing a verdict against him on the issue of justifiable self-defense.

{¶ 16} The court of appeals held that the trial court should have instructed the jury that Davidson's conduct was compensable only if it found that his conduct had been willful or wanton, and that Davidson had waived that error by not objecting to the instruction on ordinary negligence.

{¶ 17} Nevertheless, the court of appeals reversed the judgment and remanded the cause based on its conclusion that application of the plain error doctrine was necessary to prevent a miscarriage of justice. The court held that affirmance of the judgment would have a " 'material adverse [e]ffect on the character and public confidence in judicial proceedings.' " Quoting *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 209, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003.

{¶ 18} The court of appeals further held that the trial court did not err when it refused to instruct the jury on the privilege of self-defense, agreeing with the trial court that there was insufficient evidence to allow the jury to conclude that Davidson had a bona fide belief that he or his family were in imminent danger of death or great bodily harm.

{¶ 19} The cause is now before this court upon the allowance of a discretionary appeal and cross-appeal.

———————————

*Don C. Iler Co., L.P.A.*, *Don C. Iler* and *Nancy Iler*, for appellant and cross-appellee.

*Oldham & Dowling* and *William M. Oldham; Buckingham, Doolittle & Burroughs*, *David P. Bertsch* and *David W. Hilkert*, for appellee and cross-appellant.

———————————

**MOYER, C.J.**

{¶ 20} The administrator argues, *inter alia*, that the court of appeals erred by applying the plain error doctrine to reverse the judgment of the trial court. We concur,

and find our affirmance on that issue to be dispositive of the appeal presented by the administrator.

{¶ 21} This case was tried on the administrator's theory that Davidson, as the owner of property upon which Goldfuss entered as a trespasser, owed Goldfuss a duty of ordinary care in exercising any privilege he might have had to protect his property, even if Goldfuss entered the premises with the intent to commit theft offenses. At no time did Davidson challenge the administrator's theory of liability, nor did Davidson assert in the trial court either that he owed no duty to Goldfuss or that the duty was merely to refrain from willful or wanton conduct. Rather, as the court of appeals acknowledged, Davidson made that assertion for the first time after trial. Throughout the trial court proceedings, Davidson acquiesced in the administrator's characterization of the claim as one sounding in negligence, to which the defense of comparative negligence was applicable.

{¶ 22} At the conclusion of the charge to the jury, the trial court inquired of counsel whether the court had "failed to state any portion of the law." When counsel for the administrator urged the court to further instruct on the element of foreseeability, Davidson's counsel objected, stating, "I think the charge was adequately stated." Only after the jury returned its verdict finding that Davidson was seventy-five percent negligent in Goldfuss's death and Goldfuss was only twenty-five percent negligent did Davidson assert that the duty owed by Davidson to Goldfuss was other than one of ordinary care. In short, Davidson did not suggest to the trial court that its proposed instruction as to the requisite standard of care was erroneous at a time when the alleged error could have been corrected, *i.e.*, before the jury commenced its deliberation.

{¶ 23} Civ. R. 51(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Similarly, we have long recognized, in civil as well as

criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal.  See *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 436-437, 659 N.E.2d 1232, 1240; *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 271, 652 N.E.2d 952, 961; *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 40,  543 N.E.2d 464, 468-469; *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277; *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 38, 44 O.O.2d 18, 22, 238 N.E.2d 563, 569.

**{¶ 24}** Although in *criminal* cases "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,"  Crim.R. 52(B), no analogous provision exists in the Rules of *Civil* Procedure.  The plain error doctrine originated as a criminal law concept.  In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. *Schade,* 70 Ohio St.2d at 209, 24 O.O.3d at 317, 436 N.E.2d at 1003; *LeFort v. Century 21-Maitland Realty Co.* (1987), 32 Ohio St.3d  121, 124, 512 N.E.2d 640, 643; *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327-328, 480 N.E.2d 794, 800.  The case at bar does not represent this kind of exceptional case.

**{¶ 25}** We recognize that appellate courts presented with cases in which they believe error was committed may well be confronted with conflicting interests. Reviewing courts desire to see justice done; they also appreciate the importance of consistent application of procedural rules which promote expeditious and uniform resolution of disputes in our adversary system of litigation.

**{¶ 26}** While invocation of the plain error doctrine is often justified in order to promote public confidence in the judicial process, "[it is doubtful that] the public's confidence in the jury system is undermined by requiring parties to live with the results of errors that they invited, even if the errors go to 'crucial matters.' In fact, the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice." *Montalvo v. Lapez* (1994), 77 Hawaii 282, 305, 884 P.2d 345, 368 (Nakayama, J., concurring in part and dissenting in part). Moreover, the determination of a miscarriage of justice is often subjective. Litigants whose cases have been thwarted by statutes of limitations or whose appeals have been dismissed for failure to timely file a notice of appeal may believe they have suffered a miscarriage of justice. Nevertheless, it is well established that failure to follow procedural rules can result in forfeiture of rights.

**{¶ 27}** Parties in civil litigation choose their own counsel who, in turn, choose their theories of prosecuting and defending. The parties, through their attorneys, bear responsibility for framing the issues and for putting both the trial court and their opponents on notice of the issues they deem appropriate for jury resolution. See *Gallagher*, 74 Ohio St.3d at 433 and 436, 659 N.E.2d at 1238 and 1239-1240. An unsuccessful civil litigant may not obtain a new trial based upon the bare assertion that his or her attorney was ineffective. To so hold would unfairly shift the loss caused by poor strategy decisions, miscalculations, or errors from the party responsible to the innocent opponent. See *Roth v. Roth* (1989), 65 Ohio App.3d 768, 776, 585 N.E.2d 482, 487. See, also, *Deppe v. Tripp* (C.A.7, 1988), 863 F.2d 1356, 1361 ("Requiring a nonerring party to bear the burden of his opponent's errors may not be reasonable in many circumstances and in fact may [itself] constitute a miscarriage of justice."). If an attorney's representation has fallen below professional standards, remedies are available in a malpractice action. *Roth*, 65 Ohio App.3d at 776, 585 N.E.2d at 487; *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 152, 1 O.O.3d 86, 89, 351 N.E.2d 113, 117.

**{¶ 28}** We do not hold that application of the plain error doctrine may *never* be appropriate in civil cases. However, we do reaffirm and emphasize that the doctrine is sharply limited to the *extremely rare* case involving *exceptional* circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself.

**{¶ 29}** Exceptions to the requirements of Civ.R. 51(A) should be granted "only in circumstances where the error has seriously affected the basic fairness, integrity, or public reputation of the judicial process." *Yungwirth v. McAvoy* (1972), 32 Ohio St.2d 285, 288, 61 O.O.2d 504, 505-506, 291 N.E.2d 739, 741. The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial.

**{¶ 30}** We therefore hold that in appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

**{¶ 31}** Because we find the plain error doctrine to be inapplicable in this case, it is unnecessary for us to determine whether the court of appeals was correct in holding that the administrator should have been held to the burden of proving that Davidson acted willfully or wantonly to cause the death of Goldfuss in order to establish a prima facie case.

**{¶ 32}** Having concluded that the court of appeals should not have reversed the judgment of the trial court based on application of the plain error doctrine, we consider next the issues raised by Davidson in the cross-appeal.

**{¶ 33}** Davidson first argues that public policy precludes recovery for injuries sustained in the commission of a felony. We reject this proposition.

**{¶ 34}** The law should not encourage vigilantism. This court has recognized that an owner of property acting in good faith is justified in using as much force as is reasonably necessary to protect his or her property against one who is feloniously attempting to steal it. We have, however, further recognized the well-established rule that a plaintiff injured by the actions of private citizens may be entitled to recover even if that plaintiff was engaged in criminal activity at the time of his injury, if the force used exceeded that which was reasonable and necessary to repel and prevent the felony. *Allison v. Fiscus* (1951), 156 Ohio St. 120, 45 O.O. 128, 100 N.E.2d 237, at paragraphs one, four and five of the syllabus.

**{¶ 35}** Indeed, in *Allison* this court was confronted with the argument now presented by Davidson that "because of plaintiff's unlawful conduct he is not entitled to recover any damages against defendant." *Id.* at 123, 45 O.O. at 130, 100 N.E.2d at 239. The argument was rejected in *Allison*, despite recognition by this court that the plaintiff "was engaged in the commission of a felony, punishable by imprisonment in the penitentiary, in breaking and entering a man's building where valuable property was stored in order that he, plaintiff, might steal it." *Id.* at 128, 45 O.O. at 132, 100 N.E.2d at 241. See, also, Annotation, Civil Liability for Use of Firearm in Defense of Habitation or Property (1965), 100 A.L.R.2d 1021, 1038. We are not convinced that this established precedent should be changed.

**{¶ 36}** Davidson's second proposition of law suggests that a finding of assumption of risk precludes a claim for willful or wanton misconduct. That proposition is not properly before this court because the jury in this case was never presented with a claim that Davidson had acted willfully or wantonly.

**{¶ 37}** In his third proposition of law Davidson argues that a homeowner is justified in using deadly force to protect family or property against an intruder who is trespassing to commit a felony. Davidson thereby asserts the existence of privilege, an affirmative defense. A privileged act is one which ordinarily would be tortious but which, under the circumstances, does not subject the actor to liability. 1 Restatement

of the Law 2d (1965), Section 10(1); Prosser & Keeton, The Law of Torts (5 Ed.1984) 108-109, Section 16.

{¶ 38} We agree with the trial court and the court of appeals that Davidson was not entitled to an instruction on the affirmative defense of self-defense. We recognize that a defendant may be relieved of liability for tortious conduct by proving that such conduct was in self-defense. 1 Restatement of Torts, *supra*, Section 63 *et seq.*; see, also, *Skinner v. Brooks* (1944), 74 Ohio App. 288, 292, 29 O.O. 437, 438, 58 N.E.2d 697, 698 (burden of proving affirmative defense is on defendant). However, a trial court need not instruct the jury where there is insufficient evidence to support an issue. In reviewing a record to ascertain whether sufficient evidence exists to support the giving of an instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832.

{¶ 39} Where a defendant has used deadly force, the defense of self-defense requires the defendant to prove that he reasonably believed that he was in danger of death or serious bodily harm and could prevent that harm only by the immediate use of deadly force. 1 Restatement of Torts, *supra*, Section 65(1).

{¶ 40} The court of appeals found insufficient evidence in the record from which a jury could reasonably conclude that Davidson had a bona fide belief that he or his family were in imminent danger of death or great bodily harm. Both Davidson and his family were inside the house with all the doors locked while Goldfuss and Vanderwall were at least one hundred feet away when first observed at the pole barn. The evidence did not warrant an instruction on self-defense.

{¶ 41} The court did charge the jury on the privilege of defense of property, as follows: "[A] landowner may use such force as is reasonably necessary in defense of his property. A trespasser who intends to steal and is about to enter a building to commit a theft is not entitled to any affirmative notice warning him that the landowner

may use reasonable force to prevent the theft and the trespasser assumes that risk. The landowner may use such force as he in good faith reasonably believes will be necessary to prevent the theft and repel the trespasser. The landowner's right to use reasonable force extends only to the right to prevent the theft; that is, once the threat of the theft ceases, the right to use reasonable force to prevent the theft also ceases.

"Now to determine whether the defendant's use of force by discharging a firearm was reasonably necessary to prevent the theft of his property, you must put yourselves in his position, with his knowledge or lack of knowledge of the circumstances that surrounded him at the time of the shooting. And you must consider the conduct of the decedent and determine whether his acts caused the defendant to reasonably believe that such force was necessary to prevent the decedent from stealing his property."

{¶ 42} We find no error prejudicial to Davidson in this instruction.

{¶ 43} Finally, any issues pertaining to the doctrine of primary assumption of risk were not timely raised by Davidson in this case. In *Gallagher v. Cleveland Browns Football Co.*, *supra*, 74 Ohio St.3d 427, 659 N.E.2d 1232, we stated, as syllabus law, that "[f]ailure to raise primary assumption of risk before or during trial precludes the defendant from raising the defense for the first time in a motion for judgment notwithstanding the verdict." Because the doctrine of primary assumption of risk was first raised in this case, as in *Gallagher*, in a motion for judgment notwithstanding the verdict, the law established in *Gallagher* precludes further consideration of that doctrine in this case.

{¶ 44} The judgment of the court of appeals is reversed, and the cause is remanded for entry of judgment in accordance with the jury verdict.

*Judgment reversed*
*and cause remanded.*

F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in judgment only.

COOK, J., separately concurs in judgment only.

LUNDBERG STRATTON, J., concurs in part and in the syllabus, and dissents in part.

_____

**COOK, J., concurring in judgment only.**

{¶ 45} Because I believe that the plain error doctrine should be held wholly inapplicable to civil cases, I concur in judgment only.

{¶ 46} Civ.R. 51(A) and Crim.R. 30(A) are identically worded. Both procedural rules bar a party from appealing as error jury instructions that were not objected to in a timely manner at trial. The Rules of Criminal Procedure provide a "plain error" exception that is applicable in the Crim.R. 30(A) setting. Crim.R. 52(B). A similar exception to Civ.R. 51(A) is not provided. The omission is not an oversight and there is no need for courts to recognize a judicial exception.

{¶ 47} Each of our cases recognizing narrow application of the plain error doctrine to defeat Civ.R. 51(A) contemplates situations where error that was not objected to at trial affects the legitimacy of the underlying judicial process. In light of the remedies available to a civil litigant, however, recognition of plain error is not necessary to preserve the integrity of the judicial process.

{¶ 48} As noted by the majority, a civil litigant should not have two chances to defeat his opponent at trial because the counsel that he originally employed was ineffective. Unlike a criminal defendant, a civil litigant has no constitutional right to the effective assistance of counsel. See, *e.g., Lavado v. Keohane* (C.A.6, 1993), 992 F.2d 601, 605-606; *Friedman v. Arizona* (C.A.9, 1990), 912 F.2d 328, 333. Accordingly, an unsuccessful civil litigant whose attorney has fallen below the professional standard of representation may recover losses caused by the deficiency in an action for legal malpractice against his attorney, but has no right to subject the opposing party to a new trial. See *Verbanic v. Verbanic* (1994), 70 Ohio St.3d 41, 46, 635 N.E.2d 1260, 1264 (Wright, J., dissenting).

**{¶ 49}** Having removed the deficient performance of the unsuccessful party's attorney as a reason to recognize plain error as an exception to Civ.R. 51(A), the "exceptional circumstances" that "challeng[e] the legitimacy of the underlying judicial process itself" contemplated by the majority must relate to factors or influences outside the control of that party's attorney. Civ.R. 59, however, answers this concern.

**{¶ 50}** Civ.R. 59(A) permits a court to grant a new trial on several grounds, including "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial"; "[m]isconduct of the * * * prevailing party"; "[a]ccident or surprise which ordinary prudence could not have guarded against[.]" Civ.R. 59(A) also contains a catchall provision authorizing trial courts to grant a new trial for "good cause shown." Accordingly, if the reason for counsel's failure to object to error may be attributed to a cause other than deficient performance, that cause may be addressed and reviewed pursuant to Civ.R. 59.

**{¶ 51}** Quite simply, Civ.R. 51(A) and Crim.R. 30(A) deal with waiver occasioned by failure of counsel to object to error at an appropriate time. The plain error doctrine of Crim.R. 52(B) is consonant with the criminal law, which, in certain circumstances, requires the state to endure a second trial because of errors committed by a criminal defendant's counsel. The doctrine, however, is discordant with civil law, which binds a party to his counsel's acts and omissions rather than visiting the sins of that party's counsel on the opponent. *Link v. Wabash RR. Co.* (1962), 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 740, fn. 10. This court has mistakenly imported the concept of plain error into the civil setting despite its omission from the Civil Rules and its fundamental inapplicability to the civil judicial process. I would take this opportunity to correct that mistake.

———————————

**LUNDBERG STRATTON, J., concurring in part and in the syllabus, and dissenting in part.**

{¶ 52} I concur that the syllabus is a correct statement of the law. However, I believe that the issue of primary assumption of risk was sufficiently raised by the appellee and preserved for appeal. I also dissent from the majority's conclusion that public policy allows recovery under certain conditions for injuries sustained by one committing a felony.

{¶ 53} I believe the time has come for this court to reexamine its position on the doctrine of primary or express assumption of the risk in order to preclude recovery by one who is injured while engaging in criminal activity. In this case, although the result was tragic, the plaintiff was clearly engaging in a criminal act at the time of his demise. Therefore, he assumed the risk of his own death by his choice of activities.

{¶ 54} Some confusion still exists over what is meant by "assumption of risk." Although implied assumption of risk and contributory negligence have merged into comparative negligence, this merger did not include primary and express assumption of risk. Each remains a separate defense and a complete bar to recovery. *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 114, 6 OBR 170, 174, 451 N.E.2d 780, 783-784. Primary assumption of risk is generally applied in cases where there is a lack of duty owed by the defendant to the plaintiff. A typical example of primary assumption of risk is in baseball cases where a plaintiff is injured when a baseball is hit into the stands:

"This standard was stated in dicta in the case of *Cincinnati Baseball Club Co. v. Eno* (1925), 112 Ohio St. 175, 180-181 [147 N.E. 86, 87], as follows:

" 'The consensus of * * * opinions is to the effect that it is common knowledge that in baseball games hard balls are thrown and batted with great swiftness, that they are liable to be thrown or batted outside the lines of the diamond, and that spectators in positions which may be reached by such balls

assume the risk thereof.' " *Anderson*, 6 Ohio St.3d at 114, 6 OBR at 174, 451 N.E.2d at 784.

{¶ 55} Primary assumption of risk arose in another sports-related case, *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 659 N.E.2d 1232, where a videographer kneeling in an area near the end zone was injured by a football player attempting to catch a pass. This court again relied on *Cincinnati Baseball Club Co. v. Eno*:

"*Eno* demonstrates that only those risks directly associated with the activity in question are within the scope of primary assumption of risk, so that no jury question would arise when an injury resulting from such a direct risk is at issue, meaning that no duty was owed by the defendant to protect the plaintiff *from that specific risk*." (Emphasis added.) *Id*. at 432, 659 N.E.2d at 1237.

{¶ 56} Thus, a person who attends a sports function knows there are attendant risks and hazards associated with the sport. He assumes those risks and cannot hold a third person liable for his resultant injuries.

{¶ 57} The defense of "lack of duty" or "no duty" arises *because* of the assumption of the risk. One who reasonably and voluntarily exposes himself or herself to an obvious or known danger, who reasonably chooses to proceed in the face of a known risk, is deemed to have relieved defendant of any duty to protect him or her. *Siglow v. Smart* (1987), 43 Ohio App.3d 55, 59, 539 N.E.2d 636, 640; *Mima v. Akron* (1986), 31 Ohio App.3d 124, 125, 31 OBR 211, 212, 508 N.E.2d 974, 975.

{¶ 58} In *Siglow,* the plaintiff responded to a call for help from a neighbor whose house had been broken into. The Good Samaritan plaintiff was injured in the course of apprehending the burglar. In *Siglow*, the court likened primary assumption of risk to express assumption of risk which involves oral or written consent to a risk as in a contract situation:

"Reasonable assumption of risk, entailing a reasonable and voluntary exposure to an obvious or known danger, sounds in waiver and consent — not fault. * * * This type of assumption of risk, wherein one reasonably waives or otherwise relieves another of liability for injuries which might result from patently dangerous conduct or activities, is conceptually equivalent to express assumption of risk.

"The rationale behind the distinction made in the treatment of reasonable and unreasonable conduct in assuming a risk is that an individual should be fully responsible for his conscious, knowledgeable choices, whereas responsibility should be shared where negligence is demonstrated as to both parties. This reasoning supports a conclusion that reasonable assumption of risk should be retained as a complete bar to recovery." *Id*. at 59, 539 N.E.2d at 640.

{¶ 59} The application of primary assumption of risk to a person who is injured while engaging in criminal activity is even more convincing than in the sports-related cases. The person knows that the activity is criminal and that such activity creates a risk of injury or death from others attempting to protect themselves or their property or intervening to stop the illegal activity. Persons committing crimes reasonably and voluntarily expose themselves to dangers inherent in such activity and assume the risk. The consequences should fall on the shoulders of the person committing the crime. One engaging in criminal acts should not receive a greater level of protection than one attending a sporting event. Nor should anyone be held to a duty to protect criminals from the folly of their own actions. Primary assumption of risk, better characterized as express assumption of risk as described by the *Siglow* court, should operate as a complete bar to recovery.

{¶ 60} I am reluctant to go so far as to say that anyone who encounters a person committing a crime has no duty whatsoever. Those who act unjustifiably or who use excessive force may be held criminally liable for their own actions. There are adequate criminal sanctions available to punish those who use excessive force or who engage in unwarranted behavior or vigilantism. Criminal charges for

assault may be filed to hold accountable those who use excessive force beyond that necessary for self-defense or defense of one's property. But persons injured in the course of committing a crime should be held accountable for their own conduct. They should not be entitled to be compensated for civil injuries. I agree with the holding of *Allison v. Fiscus* (1951), 156 Ohio St. 120, 45 O.O. 128, 100 N.E.2d 237 (in which the defendant set a trap which injured an intruder), to the extent that it endorses the imposition of criminal liability upon a person who uses excessive force in protecting his or her property. However, I do not agree with *Allison* that civil liability should be imposed in such a case.

{¶ 61} The majority rejects the public policy argument that one should not recover for injuries sustained in committing a felony, finding that such a rule of law may encourage vigilantism. However, those who take steps to defend person or property bear the risk of liability if they mistakenly believe that another is committing a crime or if they harm an innocent person. The defense of primary or express assumption of risk is not available in such cases and liability may lie.

{¶ 62} However, individuals committing a crime bear all the risks of personal injury that flow from their criminal activity. A person should be fully responsible for his or her conscious, knowledgeable choices. *Siglow*, 43 Ohio App.3d at 59, 539 N.E.2d at 641. This includes the decision to participate in criminal conduct and the inherent risks associated with such conduct, including the risk of injury. It shocks the conscience of a civilized nation that a criminal can recover large damage awards for an injury incurred while committing a crime. Not every wrong is deserving of a legal remedy. See *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 88, 652 N.E.2d 664, 670.

{¶ 63} The law already places the risk of harm or injury that may occur *to others* upon a participant in a criminal activity. An accomplice to a crime is liable for injury or death to a victim caused by his or her partner, even though there was no intent to cause injury or death to the victim. One found guilty of complicity in

18

the commission of a crime is punished as if he or she were a principal offender. R.C. 2923.03(F). Aiders and abettors may be charged as principals in the commission of an offense and those who engage in a common enterprise are each responsible for the acts of the others who pursue the common enterprise even if the person injured or killed is the co-defendant. *State v. Ullner* (1957), 105 Ohio App. 546, 6 O.O.2d 262, 143 N.E.2d 849, affirmed *sub nom. State v. Kidd* (1958), 167 Ohio St. 521, 5 O.O.2d 202, 150 N.E.2d 413. Likewise, the responsibility for one's own injury or death resulting from one's illegal activity should rest upon a similar theory that the risks of serious or fatal consequences fall upon the shoulders of those committing criminal acts

**{¶ 64}** Davidson did assert the affirmative defense of assumption of the risk in general terms in his answer. This is sufficient notice pleading. *Gallagher*, 74 Ohio St.3d at 433, 659 N.E.2d at 1238, fn. 3. Although Davidson pleaded alternative theories of defense, he continued to pursue a theory of primary (or express) assumption of risk at trial, and in his motion for summary judgment, proposed jury instructions, and motion for judgment notwithstanding the verdict.[1] This was sufficient under the standards of *Gallagher* to raise the defense and to preserve the issue. I do not agree with the majority that Davidson waived the defense.

---

1. Although Davidson identified "implied" assumption of risk in his proposed jury instruction, the instruction clearly described primary or express assumption of risk:

"Assumption of risk can apply if the actions of the decedent were entered into knowingly and voluntarily. Assumption of risk applies when the danger to the decedent that he may be shot at and killed is so obvious that the decedent is presumed to have assumed this outcome as a known risk when he attempted to enter the Defendant's property to commit the felony of robbery. * * *

"Defendant alleges that this specific assumption of risk took place (1) when decedent entered the property of Defendant intending to commit a robbery and (2) when decedent continued to flee after the first warning shot was fired by the Defendant in an attempt to get the decedent to stop so he could be arrested."

I believe this language is sufficient to preserve the issue.

{¶ 65} I believe it is time to reexamine this issue. We should extend the doctrine of primary or express assumption of risk to injuries incurred by a person committing a criminal act. Therefore, I respectfully dissent.

_____