[Cite as *Pratt v. Easton Technical Prods., Inc.*, 2015-Ohio-3180.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


RICK PRATT                  :       JUDGES:

                             :       Hon. William B. Hoffman, P.J.

       Plaintiff - Appellee       :       Hon. Patricia A. Delaney, J.

                             :       Hon. Craig R. Baldwin, J.

-vs-                     :

                             :

EASTON TECHNICAL PRODUCTS, INC  :       Case No. 2014CA00144

                             :

       Defendant - Appellant     :       O P I N I O N


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court
of Common Pleas, Case No. 2011
CV 02511


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:             August 3, 2015


APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant

TIMOTHY H. HANNA                CHRISTINA J. MARSHALL
Leiby Hanna Rasnick Towne Evanchan    JONATHAN M. MENUEZ
Palmisano & Hobson, LLC           DANIEL A. LEISTER
388 South Main Street, Suite 402       3600 Erieview Tower
Akron, OH 44311                    Sutter O'Connell Co.
                                 1301 East 9th Street
                                 Cleveland, OH 44114

*Delaney, J.*

{¶1} Defendant-Appellant Easton Technical Products, Inc. appeals from two July 3, 2014 Judgment Entries entered by the Stark County Court of Common Pleas. Plaintiff-Appellee is Rick Pratt.

## STATEMENT OF THE FACTS AND CASE

{¶2} In 2009, Plaintiff-Appellee Rick Pratt was injured during a failed attempt to launch a Beman ICS 400 arrow, which was designed and manufactured by Defendant-Appellant Easton Technical Products, Inc. ("Easton"). Pratt was injured when the arrow broke during launch and became partially embedded in his hand.

{¶3} On or about August 8, 2011, Pratt filed a complaint against Easton under the Ohio Product Liability Act, codified at R.C. 2307.71, et seq. Pratt filed an amended complaint on February 17, 2012. In his amended complaint, Pratt alleged a defective design claim, an inadequate warnings claim, a warranty claim, and a manufacturing defect claim. After the trial court granted summary judgment in favor of Easton on all of the claims except the manufacturing defect claim, the matter proceeded to a jury trial. The jury trial commenced on June 10, 2013.

{¶4} On June 17, 2013, the jury returned with a verdict in favor of Pratt and against Easton. The jury awarded Pratt $246,283.58 in economic damages and $750,000.00 in noneconomic damages, for a total award of $996,283.58. The trial court memorialized the verdict via Judgment Entry filed June 21, 2013. On June 27, 2013, the trial court filed a Judgment Entry vacating its June 21, 2013 Judgment Entry except for the jury's determination in favor of Pratt. The trial court found Easton was entitled to a

post-verdict set-off and scheduled an evidentiary hearing for July 31, 2013. The trial court stated a final verdict would be entered upon determination of a set-off amount.

{¶5} On July 3, 2013, Pratt filed a Motion to Tax Costs, a Motion for Attorney Fees and Litigation Expenses, and a Motion for Prejudgment Interest.

{¶6} Thereafter, on July 5, 2013, Easton filed a Motion for Judgment Notwithstanding the Verdict as well as a Motion for New Trial. Both motions were overruled pursuant to Judgment Entries filed on July 3, 2014. On the same date, the trial court filed a Judgment Entry determining Pratt's compensatory damages for medical care, treatment and rehabilitation services should be reduced by $21,131.52 due to insurance payments and other adjustments. The trial court ordered the final verdict be reduced accordingly for a total verdict in the amount of $975,152.06.

{¶7} On August 1, 2014, Easton filed a Notice of Appeal from the trial court's July 3, 2014 Judgment Entry overruling it's Motion for Judgment Notwithstanding the Verdict, and the July 3, 2014 Judgment Entry overruling it's Motion for New Trial. Pratt filed a Notice of Cross Appeal on August 4, 2014.

{¶8} On August 4, 2014, Pratt filed a Motion to Dismiss Appeal or in the Alternative to Remand, arguing there was no final appealable order because the trial court had not ruled on the motions that were filed on July 3, 2014. Via Judgment Entry filed on September 2, 2014, this Court remanded the matter to the trial court to rule on all of the pending motions.

{¶9} On September 9, 2014, Pratt filed a Withdrawal of Plaintiff's Motion for Attorney Fees and Litigation Expenses. Via Judgment Entry filed September 12, 2014, the trial court granted, in part, and denied, in part, Pratt's Motion to Tax Costs. On

September 29, 2014, the trial court issued an order denying the Motion for Prejudgment Interest. The trial court filed an Addendum to the Judgment Entry regarding costs on September 30, 2014. In the Addendum, the trial court stated it had failed to address the issue of court costs in its September 12, 2014 Judgment Entry, and assessed costs to Easton. The case sub judice was then returned to our active docket.

{¶10} Pratt filed a Notice of Dismissal of Cross Appeal on January 21, 2015.

## ASSIGNMENTS OF ERROR

{¶11} Easton raises four assignments of error on appeal:

{¶12} I. THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR BY REFUSING TO INSTRUCT THE JURY AS REQUESTED BY EASTON ON THE AFFIRMATIVE DEFENSE OF CONTRIBUTORY FAULT.

{¶13} II. THE TRIAL COURT ABUSED ITS DISCRETION TO THE SUBSTANTIAL PREJUDICE OF EASTON BY ADMITTING PREMATURE REBUTTAL OPINIONS BY PLAINTIFF'S EXPERT THAT LACKED A PROPER BASIS AND SHIFTED THE BURDEN OF PROOF TO THE DEFENSE.

{¶14} III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT GRANTING EASTON'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND MOTION FOR A NEW TRIAL.

{¶15} IV. WHEN MULTIPLE TRIAL COURT ERRORS CREATE AN ENVIRONMENT IN WHICH THE JURY IS REPEATEDLY EXPOSED TO AN OVERWHELMING VOLUME OF IRRELEVANT AND HIGHLY PREJUDICIAL EVIDENCE, THE FAILURE TO GRANT THE AGGRIEVED PARTY'S TIMELY FILED MOTION FOR NEW TRIAL IS AN ABUSE OF DISCRETION.

## MOTION TO DISMISS APPEAL

{¶16}  Before addressing the merits of Easton's arguments, we note Pratt filed a Motion to Dismiss for Lack of Jurisdiction on March 27, 2015. In the motion, Pratt argued there was no final and appealable order because Easton had not filed an appeal from the September 30, 2014 final order that was filed after our remand. As stated above, this Court remanded the matter to the trial court to rule on pending motions including a Motion for Prejudgment Interest pursuant to App.R. 4(B)(2).

{¶17}   App.R. 4(B)(2) provides, in relevant part:

> After the trial court has ruled on the post-judgment filing on remand, any party who wishes to appeal from the trial court's orders or judgments on remand shall do so in the following manner: (i) by moving to amend a previously filed notice of appeal or cross-appeal under App.R. 3(F), for which leave shall be granted if sought within thirty days of the entry of the last of the trial court's judgments or orders on remand and if sought after thirty days of the entry, the motion may be granted at the discretion of the appellate court; or (ii) by filing a new notice of appeal in the trial court in accordance with App.R. 3 and 4(A). In the latter case, any new appeal shall be consolidated with the original appeal under App.R. 3(B).

{¶18} Easton has not appealed from the entries issued after remand. We find Easton's appeal, which was stayed while the pending motions were ruled on, is now properly before this Court. Pratt's Motion to Dismiss is denied.

**I.**

{¶19} In its first assignment of error, Easton argues the trial court erred by failing to instruct the jury on the affirmative defense of contributory fault.

{¶20} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Pettit v. Hughes*, 177 Ohio App.3d 344, 2008-Ohio-3780, 894 N.E.2d 738 (5th Dist). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Jury instructions must be reviewed as a whole. *State v. Coleman,* 37 Ohio St.3d 286, 525 N.E.2d 792 (1988). Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).

{¶21} Easton argues it requested the trial give its proposed jury instruction on contributory fault to the jury. Easton contends it requested the following instruction**:**

The Defendant claims that the Plaintiff was negligent. The Plaintiff was

negligent if he failed to use the care for his own safety which a reasonably

careful person would use under the same or similar circumstance.

{¶22} According to Easton, such request was included in the proposed jury instructions e-mailed to the Magistrate, with a copy to opposing counsel, pursuant to the trial court's Case Management and Trial Court Order of February 1, 2012. Easton argues Pratt was contributorily negligent by failing to perform Easton's field test of the arrow that involved a visual inspection, a flex test, and a twist test.

{¶23} However, the emailed version of the proposed jury instruction is not part of the record. Moreover, Easton filed Proposed Jury Instructions on June 17, 2013 but Easton's proposed jury instructions did not request an instruction on contributory negligence. Finally, the record establishes Easton never raised the issue when the trial court requested comments on the jury instructions.

{¶24} Civ.R. 51, provides:

(A) Instructions; error; record

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * *

On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

{¶25} It is well-established that a party may not assign as error on appeal "the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Civ.R. 51(A). *See also Galmish v. Cicchini* , 90 Ohio St.3d 22, 32, 2000-Ohio-7, 734 N.E.2d 782. Moreover, it is well-settled that failure to object at the trial court level to a complained of error results in a waiver of that error on appeal. *Id.*

{¶26} Easton did not object to the jury instructions and therefore argues the trial court committed plain error. However, we find the plain error doctrine is usually only applied in the criminal context where a defendant's failure to object to an allegedly erroneous jury instruction affects the defendant's substantial rights. *See* Crim.R. 52(B).

{¶27} As noted by this Court in *Kell v. Russo,* 5th Dist. Stark No. 2011 CA 00082, 2012-Ohio-1286 at paragraphs 30-31:

> In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, at paragraph one of the syllabus.

> In *Goldfuss,* the Court explained that the doctrine shall only be applied in extremely unusual circumstances where the error complained of, if left uncorrected, would have a material adverse effect on the character of and public confidence in judicial proceedings. *Id.* at 121, 679 N.E.2d 1099. The Court concluded that the public's confidence is rarely upset merely by forcing civil litigants to live with the errors they themselves or the attorney chosen by them committed at trial. *Id.* at 121–122, 679 N.E.2d 1099.

{¶28} This Court, in *Kell*, held a plain error review of jury instructions was not warranted. Upon review of the record, we find no indication of plain error in the instant case. Assuming, arguendo, the trial court should have instructed the jury on contributory negligence, any error does not rise to the level expressed in *Goldfuss, supra.*

{¶29} Based on the foregoing, Easton's first assignment of error is overruled.

**II.**

{¶30} In its second assignment of error, Easton asserts the trial court erred in permitting Pratt's liability expert, Daniel Greene, to refute the opinions of Easton's expert, Joseph Rakow Ph.D., during Pratt's case in chief. Easton submits the trial court erred in allowing this premature rebuttal testimony.

{¶31} R.C. 2315.01 states, in relevant part, as follows:

(A) When the jury is sworn, unless for special reasons the court otherwise directs, the trial shall proceed in the following order except as provided in section 2315.02[1] of the Revised Code:

(1) The plaintiff concisely shall state the plaintiff's claim, and briefly may state the plaintiff's evidence to sustain it.

(2) The defendant briefly shall state the defendant's defense, and briefly may state the defendant's evidence in support of it.

(3) The party who would be defeated if no evidence were offered on either side, first, shall produce that party's evidence, and the adverse party shall then produce the adverse party's evidence.

---

[1] R.C. 2315.02 concerns jury views in civil cases.

(4) The parties then shall be confined to rebutting evidence,

unless the court for good reasons and in the furtherance of justice,

permits them to offer evidence in their original cases * * *

{¶32}  In *Nickey v. Brown,* 7 Ohio App.3d 32, 35, 454 N.E.2d 177 (9th Dist.1982), the court explained rebuttal evidence "is that which is given to explain, repel, counteract, or disprove facts given in evidence by the adverse party. It is that evidence which has become relevant or important only as an effect of some evidence introduced by the other side." *Id.,* quoting 31 Corpus Juris Secundum, Evidence, Section 2, at 818.  A party may rebut evidence adverse to the party's side, but such evidence must be introduced by the opposing party first. *Weimer v. Anzevino*, 122 Ohio App.3d 720, 702 N.E.2d 940 (7th Dist). "[I]n the absence of a good reason to the contrary, it is reversible error for a trial court to fail to follow trial procedure as provided in R.C. 2315.01." *Polasky v. Stampler,* 30 Ohio App.2d 15, 19, 281 N.E.2d 191 (1st Dist.1971).

{¶33}  In the case sub judice, Pratt's expert, Daniel Greene, was called during Pratt's case in chief. Prior to Greene's testimony, Pratt's counsel stated he was "not going to get into specifics about Dr. Rakow's opinion." Trial Transcript, Vol. 4 at 8. Easton's counsel then stated, "[w]ith regard to Joe Rakow's opinions and what I consider to be rebuttal opinions, obviously we'll try and object from our chair and merely say rebuttal so that we don't have to have so many sidebars." Trial Transcript, Vol. 4 at 9.  In response, the trial court stated:

THE COURT:    Yeah, I know and giving more thought to

that, it's not uncommon for experts to have reviewed each other's

reports at the time their original discovery depositions were taken

and to be able to render opinions on that in this case, and I don't know why it happened, but usually all discovery reports are exchanged before the actual depositions.

I may be kind of revisiting some things but I don't - - and I have the prerogative of doing that. So if Dr. Rakow's report is something that Mr. Greene reviewed in developing his opinions, I'm thinking that's fair game for his testimony, and I realize that that may be revisiting my issues on rebuttal, but it doesn't do you any harm if Dr. Rakow never takes that stand.

Trial Transcript, Vol. 4 at 9-10. (Emphasis added).

{¶34} Thereafter, during direct examination, Greene was questioned, over objection, about Dr. Rakow's report. For example, the following testimony was adduced:

Q: Mr. Greene, you had an opportunity to review after your first deposition was taken Dr. Rakow's report and then his deposition; is that correct?

A: That is correct.

Q: Mr. Greene, do you have an opinion, within the realm of reasonable engineering probability, as to whether or not Dr. Rakow's opinion that is impossible for an unobstructed arrow to fail is not based upon a generally accepted engineering principle?

MR. MENUEZ: Objection, facts not in the evidence and misstates the opinion.

THE COURT: Note your objection. Overruled, go ahead.

THE WITNESS:    Dr. Rakow's opinion that it is impossible for an arrow to fail is not supported by the information in the Boeing report.

Trial Transcript, Vol. 4 at 38-39.

{¶35} As another example, Greene was permitted to testify, over objection, that he disagreed with Dr. Rakow's opinion in not testing arrows from the same manufacturing lot. Greene also was permitted to testify, over objection, that he had criticisms of Dr. Rakow's "failure to videotape the tests of more than one plane to verify the true angle and degree of deformation." Trial Transcript, Vol. 4 at 48. At the time the questions were asked of Greene, Dr. Rakow had not testified.  Dr. Rakow did, however, testify later.

{¶36} We disagree with Easton and find the trial court did have "good reason" for allowing Pratt to present "rebuttal testimony" in this manner. The record reflects Greene issued two reports, one on January 31, 2012, and another on May 1, 2012.  Greene was then deposed on June 4, 2012.  Dr. Rakow issued his report in the fall of 2012.  A second deposition of Greene was conducted on June 5, 2013, relative to a subsequent report he authored after reviewing Dr. Rakow's report.  We find Greene's testimony regarding Dr. Rakow was proper as Greene reviewed Dr. Rakow's report in forming his ultimate opinions in this case.

{¶37} In addition, Greene testified on June 11, a Tuesday.  If the trial court required counsel to present testimony in order of the witnesses, Greene would have had to wait until the following Monday or Tuesday before testifying in rebuttal.  Greene is from Atlanta, Georgia.  A delay in testifying would have required him to stay longer in

Stark County for a week, or make a return trip, either option would create unnecessary costs and inconvenience.

{¶38} We do not believe Easton was substantially prejudiced by such opinion testimony and its ability to fairly defend itself was not compromised. Although the trial court stated Easton would not be harmed if Dr. Rakow did not take the stand, we believe, when the trial court's statement is read in its full context, the trial court simply misspoke. We think the trial court likely meant to say if Dr. Rakow **did** take the stand, Easton would not be harmed. Dr. Rakow's subsequent testimony provided Easton with an opportunity to lessen, if not negate, the impact of Greene's asserted "premature rebuttal" testimony.

{¶39} Easton's second assignment of error is overruled.

**III.**

{¶40} In its third assignment of error, Easton contends the trial court erred in overruling its Motion for New Trial pursuant to Civ.R. 59 and Motion for Judgment Notwithstanding the Verdict.

{¶41} In its Motion for New Trial, Easton argued it was entitled to a new trial pursuant to Civ.R. 59(A)(1), irregularity of proceedings, and (2), misconduct of prevailing party. The granting of a Civ.R. 59(A) motion for new trial is generally left to a trial court's sound discretion and the decision will not be reserved absent an abuse of that discretion. *State Farm Mut. Auto. Ins. Co. v. Williams,* 5th Dist. Licking No. 13–CA–04, 2013–Ohio–3884, at ¶ 22. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable,

unconscionable, or arbitrary. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶42} Easton asserts it is entitled to a new trial, in part, because Pratt improperly introduced other similar incidents, or "OSI", evidence. Prior to trial, on December 20, 2012, Easton filed a Motion in Limine, seeking to exclude any mention of allegedly "similar incidents." The trial court granted such motion.

{¶43} During opening statements, Pratt's counsel indicated after Pratt's discussions with Easton broke down, Easton "goes into full litigation mode and contacts counsel that has represented them in the past in an exploded arrow case and is currently representing them… in an exploded arrow case." Trial Transcript, Vol. 2 at 30. Easton objected. The trial court asked Pratt's counsel why he would say "exploded arrow case" and counsel responded Easton hired Dr. Rakow in other cases. The trial court informed Pratt's counsel he "can't go into the specifics and say exploded arrow. That's prejudicial to them." Trial Transcript, Vol. 2 at 32. The trial court also told counsel he could say Easton hired Dr. Rakow, but could not "go into every different type of case." Trial Transcript, Vol. 2 at 32.  The trial court indicated it would give a curative instruction, and directed Pratt's counsel not to refer to any other type of case. The trial court then instructed the jury to disregard any "reference to any other incident involving an arrow failure in any other incident." Trial Transcript, Vol. 2 at 37. Immediately thereafter, Pratt's counsel informed the jury Dr. Rakow had testified in more than one other case concerning a defective arrow.

{¶44} Subsequently, during cross-examination of Kenny Giles, Easton's design engineer, Pratt's counsel asked him how many cases he had been involved in

concerning a failure of an Easton arrow. Easton's counsel objected and the trial court overruled the objection. Pratt's counsel then asked Giles how many cases he had been involved in regarding "the failure of an Easton arrow similar to what's going on here?" Trial Transcript, Vol. 5 at 189. Easton's counsel again objected and the trial court overruled the objection. When Pratt's counsel asked Giles "how any times has your deposition been taken in a case such as this?", Easton's counsel objected to the second half of the question and the trial court sustained the objection "as to the way the question was formed." Trial Transcript, Vol. 5 at 191.

{¶45} Subsequently, Pratt's counsel asked Dr. Rakow if he had previously been an expert in an arrow case. After he indicated he had, Pratt's counsel responded "[a]nd one of those cases was Bird versus Easton." Trial Transcript, Vol. 6 at 230. Easton's counsel then objected and moved for a mistrial. The following discussion took place on the record during a bench conference:

> MR. HANNA:  I am connecting up his relationship with the Defense Counsel, and he has testified for the Defense Counsel on numerous cases for the relationship between these guys and him.
>
> MR. MENUEZ: He was told not to prior to the beginning of trial.
>
> THE COURT: I did say - - I said that a number of times he has testified for counsel is relevant but not particularly in another case involving an arrow. Has he testified as an expert witness on behalf of Defendants before is fine.  Has he testified before on

behalf of the counsel that retained him before is fine.  But to go into specifics about specific cases involving arrow is off limits.

MR. HANNA: I'm not going to go into the specifics of the case.

MR. CONLEY: You already did.

MR. HANNA: I just said the name.

THE COURT: You named a case.

MR. HANNA: Well, because he hasn't disclosed all of the cases he's been involved in with these guys.  I know that and I can prove that.

THE COURT: Well, you want to separately voir dire him on that then because this is not going to happen in the presence of the Jury, because we're bordering on OSI and I have specifically ruled on that.

Trial Transcript, Vol. 6 at 231-232.

{¶46}  Pratt's counsel indicated to the trial court Dr. Rakow had testified in three cases for Easton and Easton's counsel objected because Pratt's counsel was holding up three fingers in front of the jury. Pratt's counsel denied doing so.

{¶47}  The trial court explained it held the way it did regarding other similar acts evidence because "it was my understanding after discussion with all counsel that Mr. Hanna could not produce the evidence at this time necessary for a separate hearing that would qualify for other similar incident evidence in this particular case. The reason

why it's inappropriate to ask about other failed arrows in this context is Rule 403, which is evidence that would serve to confuse the jury." Trial Transcript, Vol. 6 at 238.

{¶48} Prior to denying Easton's request for a mistrial, the trial court stated:

THE COURT:   The problem is you keep - - prefaced your comments by have you ever been an expert in an arrow case before, which raises the inference that there has been other litigation about failed arrow cases with respect to this particular arrow.  Whether or not you said the specific arrow, we had this discussion, and even the case cite which cites Easton as a Defendant.  And I can't even remember if we went on - - I mean the primary business of Easton is the manufacture of arrows I believe is what my understanding is.

I do not have a problem with questioning, you know, have you testified as a, you know, engineer or behalf of the Defendant's in the past, or have you testified for Mr. Menuez or Mr. Conley in the past, but to suggest that he's testified in cases involving Easton arrows when that raises the inference that there is other failed arrows out there only serves to confuse the jurors.

Trial Transcript, Vol. 6 at 242-243.

{¶49} The trial court denied the request for a mistrial, but found Pratt's counsel in contempt and fined him $250.00. The jury was instructed to disregard the questioning about other arrow cases and informed counsel had been fined.

{¶50} Although we agree the introduction of OSI evidence was improper, we find any error in the admission of such evidence did not warrant the granting of a new trial. In its July 3, 2014 Judgment Entry denying Easton's Motion for New Trial, the trial court found the jury knew the Boeing Report[2] was conducted due the "the large number of arrow failures in the field, not just the ICS Hunter 400 arrows" and the jury, on such basis, could have concluded other failed arrow cases had been filed against Easton. Easton presented the testimony of the author of the Boeing Report. While Easton disagrees with the trial court's proffered rationale that the jury could have concluded other failed arrow cases had been filed against Easton based upon the Boeing Report, we find the trial court's rationale was not unreasonable, unconscionable, or arbitrary. Furthermore, upon review of the entire transcript of this matter, we find the few references to OSI evidence was harmless in light of the tremendous volume of testimony heard over the weeklong trial. Accordingly, we find the trial court did not abuse its discretion in denying Easton's Motion for New Trial.

{¶51} Easton also argues the trial court erred in overruling its Motion for Judgment Not Withstanding the Verdict.

{¶52} "A motion for judgment notwithstanding the verdict is used to determine only one issue, i.e., whether the evidence is totally insufficient to support the verdict." *Krauss v. Streamo,* 5th Dist. Stark No. 2001 CA00341, 2002–Ohio–4715, paragraph 14. *See also*, *McLeod v. Mt. Sinai Medical Center*, 166 Ohio App.3d 647, 853 N.E.2d 1235 (8th Dist.2006), reversed on other grounds, 116 Ohio St.3d 139, 876 N.E.2d 1201 (2007). Neither the weight of the evidence nor the credibility of the witnesses is a proper

---

[2] Easton contacted Boeing in 2002, and asked Boeing to investigate arrow failures. Over a four year period, Boeing tested 12,000 arrows and prepared a report. Plaintiff's Exhibits 6 and 7, which concerned the report, were not admitted at trial.

consideration for the court. *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976). *See also*, Civ.R. 50(B); and *Osler v. Lorain*, 28 Ohio St.3d 345, 347, 504 N.E.2d 19 (1986). In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. *Osler,* supra.

{¶53}   Appellate review of a ruling on a motion for judgment notwithstanding the verdict is de novo. *Midwest Energy Consultants, L.L.C. v. Utility Pipeline, Ltd.,* 5th Dist. Stark No. 2006CA00048, 2006–Ohio–6232.

{¶54}  Upon review of the evidence presented at trial, we find there is sufficient evidence to support Pratt's side so that reasonable minds could not come to only one conclusion adverse to Pratt. Accordingly, we find the trial court did not err in denying Easton's motion for judgment notwithstanding the verdict.

{¶55}  Easton's third assignment of error is overruled.

**IV.**

{¶56} In its fourth assignment of error, Easton maintains multiple trial errors created an environment in which the jury was repeatedly exposed to an overwhelming volume of irrelevant and highly prejudicial evidence and, for such reasons; the trial court erred in denying its Motion for New Trial. We disagree.

{¶57}  Having found no error in the first, second and third assignments of error, we overrule Easton's fourth assignment of error.

**CONCLUSION**

{¶58} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.

Hoffman, P.J., and

Baldwin, J., concurs in part and dissents in part.

*Baldwin, J., concurring in part and dissenting in part*

**{¶59}** While I concur with the majority's analysis and disposition of appellant's first assignment of error, I respectfully disagree with the majority's analysis and disposition of appellant's second, third and fourth assignments of error.

**{¶60}** With respect to appellant's second assignment of error, I concur with appellant that the trial court did not provide a "good reason" for allowing appellee to present rebuttal testimony in the manner that it did. Appellee's expert rebutted matters that were not yet in evidence. The end result was that Rakow was discredited before he ever took the stand and the veracity of his opinions was attacked. I believe that appellant was substantially prejudiced by such rebuttal testimony and that its ability to fairly defend itself was compromised. I note the trial court had stated that appellant would not be harmed if Rakow did not take the stand. He did, indeed, take the stand. On such basis, I would sustain appellant's second assignment of error.

**{¶61}** With respect to its third assignment of error, appellant contends that the trial court erred in overruling its Motion for New Trial pursuant to Civ.R. 59 and Motion for Judgment.

**{¶62}** I believe that the improper introduction of OSI evidence warranted the granting of a new trial. The majority notes that the trial court, in its July 3, 2014 Judgment Entry denying appellant's Motion for New Trial, found that the jury knew that the Boeing Report was conducted due the "the large number of arrow failures in the field, not just the ICS Hunter 400 arrows" and that the jury, on such basis, could have concluded that other failed arrow cases had been filed against appellant. However, there is no indication that the Boeing report stated that appellant had actually been sued in the past for incidents related to the arrow that the subject of this case. Moreover, the

Boeing report concerned arrows other than the ICS Hunter 400 arrows.  I would find that the trial court abused its discretion in denying appellant's Motion for New Trial based on the numerous instances of counsel misconduct that deprived appellant of a fair trial.

**{¶63}** Appellant, in its third assignment of error, also argues that the trial court erred in overruling its Motion for Judgment Notwithstanding the Verdict. However, based on my analysis of appellant's second assignment of error and my belief that the trial court should have granted a new trial due to misconduct, I would find this argument to be moot. See, for example, *Burnworth v. Ohio Bell Tel. Co.*, 5th Dist. Stark No. CA-9066, 1993 WL 289846 and *Sun Ins. v. Edwards*, 97 Ohio App.3d 239, 243, 646 N.E.2d 535 (1st Dist. 1994)  ("Because our disposition of the first assignment of error requires a new trial in this case, we need not address plaintiff's third assignment of error, that the trial court erred by overruling plaintiff's motion for judgment notwithstanding the verdict or for a new trial. See App.R. 12(A)(1)(c).")

**{¶64}** Based on the foregoing, I would sustain appellant's third assignment of error.

**{¶65}** As noted by the majority, appellant, in its fourth assignment of error, argues that multiple trial errors created an environment in which the jury was repeatedly exposed to an overwhelming volume of irrelevant and highly prejudicial evidence and that, for such reason, the trial court erred in denying its Motion for New Trial.

**{¶66}** Based on my analysis of appellant's second and third assignments of error, I would sustain appellant's fourth assignment of error. I believe that cumulative errors warrant the granting of a new trial.

**{¶67}** Accordingly, based on the foregoing, I would reverse the judgment of the Stark County Court of Common Pleas and remand this matter for further proceedings.

_____

HON. CRAIG R. BALDWIN

[Cite as *Pratt v. Easton Technical Prods., Inc.*, 2015-Ohio-3180.]