OPINION
Plaintiff-Appellant State Farm Mutual Automobile Insurance Company ("State Farm") appeals the judgment entry of the trial court adopting the magistrate's decision of July 11, 2000.
This case arises out of a one-car automobile accident which occurred on May 17, 1998 while Defendant-Appellee Jarrod C. Doss ("Jarrod") was driving a car belonging to his girlfriend, Jennifer Goodall ("Jennifer"). The vehicle, a 1995 Chevrolet Camaro, was titled in Jennifer's name and listed on her father's State Farm policy with her designated as the owner and the primary driver. During the time period surrounding the accident, Jennifer was attending Miami University, and coming home on weekends. Often, Jarrod and his brother would pick Jennifer up from school and take her back in her Camaro. Sometimes she would advise Jarrod to leave her vehicle at his home during the week while she was away at school because her father's car had been vandalized in front of Jennifer's home. At times when Jarrod had the car, he would occasionally drive it to the store or even to school, despite having only a temporary permit. Jennifer claimed that she never gave him permission to drive her car without a licensed driver present. However, she learned of these few occasions after the fact and did not object.
On this particular week, Jarrod and his brother had taken Jennifer to school on
Sunday and she told Jarrod to park the car at his house until Thursday when she would pick it up. At approximately 4:00 or 5:00 in the afternoon on Thursday, she went to Jarrod's house to pick up the car, but it was not there. After she waited at Jarrod's house for two to three hours, he phoned. Jarrod told Jennifer that he was at a friend's house about a half hour away, and he had just been in a fight that left him "dazed." Regardless, she told him unequivocally to bring the car back to his house immediately because she needed to go somewhere. In response, Jarrod explained to Jennifer that he was "dazed" and it may take a little while before he felt able to drive. Jennifer waited at Jarrod's house another two to three hours, and then left when he had not arrived home.
The next morning at approximately 8:30, Jarrod began to drive the car back to his house when he decided to stop at a drive-up payphone and call Jennifer. When he stopped, some kids in another car pulled up beside him and started taunting and yelling at him. Jarrod got back into the car and left. The kids chased him until they collided slightly with the back bumper of the Camaro, causing him to hit a grass patch, lose control of the car and hit a telephone pole. The vehicle was totaled, and Jarrod was taken to the hospital with minor injuries.
State Farm paid the Goodalls for the damage to the vehicle and filed this action for subrogation against Jarrod. Liability and damages were stipulated and a trial was held to determine if Jarrod had permission to drive the vehicle at the time of the accident. Following the accident, Jarrod gave a recorded statement to State Farm which was played at trial. During Jarrod's statement, he admitted that he did not have Jennifer's permission to take the car that day. However, he did say that she demanded he bring it back home. Jennifer likewise testified at trial that she did not give him permission to take the car that day, but ordered him to bring it home when they spoke on the phone. Mr. Goodall testified that he never gave Jennifer permission to allow other people to drive her car.
Following the trial, the magistrate issued a decision finding that Jarrod did have permission to drive Jennifer's car and therefore State Farm could not subrogate against him. No objections were filed to the magistrate's decision, and the trial court entered judgment adopting same. State Farm appeals this judgment raising the following assignment of error:
 The trial court erred in adopting the magistrate's decision which contained plain error on its face due to a misapplication of Jackman v. Cincinnati Ins. Co.
(1987), 41 Ohio App.3d 149.
 Initially, we note that State Farm's failure to file objections to the magistrate's decision severely limits our review. In this regard, Civ.R. 53(E)(3)(b) states in part: "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." This language is followed by Civ.R. 53(E)(4)(a)'s provision that a "court may adopt the magistrate's decision if no written objections are filed unless it determines that there is an error of law or other defect on the face of the magistrate's decision." See Group One Realty, Inc. v. Dixie Internatl. Co. (1998), 125 Ohio App.3d 767, 769; Timbercreek Village Apts. v. Myles (May 28, 1999), Montgomery App. No. 17422, unreported, at p. 4. The language of Civ.R. 53(E)(4)(a) requires "apparent error" by the magistrate in order for the court to sua sponte
decline to adopt the magistrate's decision. Group One Realty, supra. It follows that when a party fails to file objections, we may only review the trial court's adoption of the magistrate's decision for plain error. R.G. Real Estate Holding, Inc. v. Wagner
(April 24, 1998), Montgomery App. No. 16737, unreported, at p. 3; Myles, supra.
[T]he Supreme Court of Ohio has explained plain error as follows:
 The plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.
 Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus. State Farm argues that the magistrate misapplied Jackman v. Cincinnati Ins. Co. (1987), 41 Ohio App.3d 149, resulting in plain error. We disagree.
In Jackman, the vehicle involved was titled to Robert Meyers, and the named insureds on the Cincinnati Auto Insurance policy were Robert and Dorothy Meyers. Robert frequently allowed their sixteen-year-old son, Michael, to drive this vehicle, but often admonished him not to allow others to drive it. On the night in question, Michael had borrowed the car with his father's permission to drive to a party. While at the party, Michael allowed his friend, Clark, to borrow the car to take another friend home. During this excursion, Clark rear-ended another vehicle. The Cincinnati policy provided liability coverage for anyinsured, which was defined in part as "(1) the named insured and any resident of the same household," and "(2) any other person using such automobile with the permission of the named insured * * *." The Jackman
court cited West v. McNamara (1953), 159 Ohio St. 187, finding that if a named insured gives permission to use the vehicle to the first permittee but is silent as to the first permittee's ability to delegate this permission, if the first permittee gives permission to a second permittee, that individual is not covered under the policy. Id. at 151.
Although the present facts are similar to those in Jackman, one significant difference is the owner of the vehicle. In Jackman, the father was the named insured and the owner of the vehicle. There is no indication in the opinion that Michael was even listed on the Cincinnati policy. On the contrary, Jennifer, although not a named insured, was listed on the State Farm policy as the owner and primary driver of the vehicle. Therefore, she did not need her father's permission to use the vehicle. Because she did not need permission to use the vehicle, she cannot be considered the "first permittee," but instead, Jarrod would be the "first permittee." Consequently, the rationale of Jackman does not apply to this case.
Furthermore, the State Farm policy in question was not made part of the record, so we are unaware of the specific policy language regarding consent. Nonetheless, R.C. 4509.51(B) provides that liability insurance "[s]hall insure the person named therein and any other person, as insured, using any such motor vehicles with the express or implied permission of the insured***." Although we cannot be sure how State Farm's policy defines "insured," because both Jennifer and her father testified that she was listed as the owner and primary driver of the Camaro, we are relatively certain that she would be considered an insured under the policy. And according to R.C. 4509.51(B), her permission to Jarrod would have been sufficient to afford coverage.
Nevertheless, we still must determine whether Jennifer actually gave permission to Jarrod to drive the vehicle. In this regard, Blount v.Kennard (1992), 82 Ohio App.3d 613, is persuasive. After a night out visiting several bars, Blount and his friend Kennard spent the night at another friend's apartment. The next morning, Blount wished to return to his parents' house, but had no vehicle or valid license. After unsuccessfully trying to arouse Kennard, Blount left a note that he drove Kennard's car home and for Kennard to call him when he wants him to bring it back. When Kennard awoke, he was angry that his car was not there, so he phoned Blount and instructed him to return it immediately. On his way back, Blount was involved in an accident. Id. at 614-15.
Kennard's automobile policy with State Auto contained a provision excluding coverage for any individual "[u]sing a vehicle without a reasonable belief that that person is entitled to do so." Id. at 616. In determining whether Blount had a reasonable belief that he was entitled to drive Kennard's vehicle, the court considered that Blount had driven the vehicle in the past with Kennard's permission. More importantly, the court recognized that not only did Kennard fail to object to Blount's driving the vehicle back to the apartment, but he instructed him to do so. Id. at 616. In addition, the court found it irrelevant that Blount was unlicensed, as the test was whether Kennard authorized him to drive the car, not whether he was licensed to drive it. Id. at 617.
Again, we are not privy to the language of the State Farm policy as it pertains to authorization to drive an insured vehicle. However, we agree with the magistrate that the affirmative defense to the crime of unauthorized use of a vehicle found in R.C. 2913.03(C) is instructive. In this regard, the statute provides if an individual reasonably believes at the time of the offense that he was authorized to use the vehicle, he has an affirmative defense to the crime. R.C. 2913.03(C). Just as inBlount, Jennifer had instructed Jarrod to return her vehicle to his house where she was waiting. Although it was clear she wanted him to return it immediately, it was reasonable for him to believe that she wanted the car returned, even if he could not return it at that very moment. As a result, Jarrod had a reasonable belief that he was authorized to drive the car back to his home.
Based on the foregoing discussion, we find the trial court did not commit plain error in adopting the magistrate decision finding that Jarrod had permission to drive the vehicle at the time of the accident. Accordingly, State Farm's sole assignment of error is overruled. Judgment affirmed.
GRADY, J., and YOUNG, J., concur.
 _______________ Brogan J.,