OPINION
Appellant Jan-Michael Williams appeals from an order of the Montgomery County Court of Common Pleas, Probate Division, denying his application to admit to probate a copy of a will as and for the decedent's last will. Williams contends that the probate court's decision is against the manifest weight of the evidence and that the court erred by permitting testimony regarding the testator's competency to execute the will.
We find that the evidence supports the probate court's findings. We further find that Williams failed to object to the testimony regarding competency, and failed to show plain error stemming therefrom. Accordingly the judgment of the trial court is Affirmed.
 I
J.T. Brown, Jr. died on March 31, 1999, a resident of Montgomery County, Ohio. Since no will was offered for probate, his mother, Louise Brown was appointed administrator of his estate. Thereafter, on June 7, 1999, appellant Jan-Michael Williams filed an application with the probate court seeking to have Ms. Brown removed as administrator. The motion was denied. In December, 1999, the final accounting was filed, and approved by the probate court.
On April 18, 2000, Williams filed an application to admit to probate a copy of a will purportedly executed by J.T. Brown. Williams and Rhonda Bailey Long [ Brown's step-daughter] were both named as beneficiaries under the terms of the copy of the will submitted for probate.
A hearing was held on the application in November, 2000. At the hearing, Williams presented the testimony of attorney William E. Fischer, who testified that he drafted the original will for J.T. Brown in 1980. Fischer further testified that, pursuant to his standard practice, he would have had Mr. Brown sign the will in the presence of witnesses. He also testified that the copy of the will contained the following type-written signature line: "/s/J.T. Brown, Jr.". According to Fischer, his standard procedure was to put the symbol "/s/" on the signature line to signify that the original was properly signed. Fischer also testified that it was his standard practice to: (1) give the executed will to the client; (2) deposit it with the Probate Court "for safekeeping"; or (3) place it in his office safe. He testified that he had no recollection of either depositing the will with the Probate Court or placing it in his office safe. Finally, Fischer testified that he had no recollection of J.T. Brown or of executing the will, and that he did not know what became of the original will.
Williams also presented the testimony of Rhonda Bailey Long, J.T. Brown's stepdaughter, who testified that she found the copy of the will with Brown's "personal papers" during her "fourth or fifth visit" to clean and organize the decedent's house following his death. She further testified that Brown was a "pack-rat" who "kept everything known to man."
Following the hearing, the probate court filed an order and entry denying the application to admit the lost will to probate. From this order, Williams appeals.
As a preliminary matter, we note that the brief submitted by Williams fails to comply with App.R. 19(A), in that its text is single-spaced. Furthermore, the appellant's brief fails to comply with App.R. 16(A)(1), (2), (4), (5) and (6). Counsel for appellant is hereby admonished to comply with the rules governing the form of appellate briefs. Counsel is further advised that future failures to comply with the appellate rules may result in the return of any non-compliant materials for reformation pursuant to Loc.App.R. 2.2(B).
 II
Williams's First and Second assignments of error are as follows:
 THE APPELLANT STATES THAT THE COURT ERRED IN FAILING TO FIND THE TESTIMONY OF PRODUCED WITNESSES AS CLEAR AND CONVINCING EVIDENCE OF THE DISPOSITION OF THE COPY OF THE WILL PRODUCED.
 THE COURT ERRED THROUGH AN IMPLIED DETERMINATION THAT THE WILL IN QUESTION WAS REVOKED BY THE TESTATOR.
In these assignments of error, Williams contends that the trial court's decision denying his application to admit to probate the copy of the will is against the manifest weight of the evidence. In support he argues that the evidence supported a finding that J.T. Brown did not revoke his will, and that the will was validly executed in accordance with the law.
R.C. 2107.26 and 2107.27 are known as the "lost wills statutes." They govern the admission of lost, spoliated or destroyed wills. R.C. 2107.26
provides:
 When an original will is lost, spoliated, or destroyed subsequent to the death of a testator, or before the death of such testator if the testator's lack of knowledge of such loss, spoliation, or destruction can be proved by clear and convincing testimony, or after he became incapable of making a will by reason of insanity, and such will cannot be produced in the probate court in as complete a manner as the originals of last wills and testaments which are actually produced therein for probate, the court may admit such lost, spoliated, or destroyed will to probate, if such court is satisfied the will was executed according to the law in force at the time of its execution and not revoked at the death of the testator.[1]
R.C. 2107.27 provides, in pertinent part, as follows:
 *** If upon such proof, the court is satisfied that the will was executed in the manner provided by the law in force at the time of its execution, that its contents are substantially proved, that it was unrevoked at the death of the testator, and has been lost, spoliated, or destroyed since his death, since he became incapable of making a will by reason of insanity, or before the death of the testator if his lack of knowledge of the loss, spoliation, or destruction can be proved by clear and convincing testimony, the probate court shall find and establish the contents of the will as near as can be ascertained and cause them and the testimony taken in the case to be recorded in the probate court. ***
In interpreting these statutes, the Ohio Supreme Court has stated that "where a will is left in the custody of the testator and cannot be found after his death a presumption arises that he destroyed the will with an intent to revoke it." In re Estate of Haynes (1986), 25 Ohio St.3d 101,104. "[T]he standard of proof necessary to admit a lost, spoliated, or destroyed will to probate is clear and convincing evidence that the loss, spoliation, or destruction of the original will occurred subsequent to the death of the testator or before the death of the testator, but without his knowledge." Id. at 103-104. "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established." Id. at 104.
"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 280. In considering whether the judgment of the trial court is against the manifest weight of the evidence, a reviewing court is guided by the presumption that the findings of the trial court, as trier of fact, are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80.
In this case, the testimony indicates that the standard practice of the attorney who drafted the will was to file the will with the Probate Court, keep it in a safe in his office, or give it to the testator. Given that the attorney did not recall either depositing the will with the court or in his safe, and that there was no evidence to indicate that the original was found in either place, the trier of fact could reasonably infer that the will was given to the testator. Hence, the presumption of revocation arises. Indeed, Williams does not appear to dispute that the presumption of revocation arises under the facts of this case.
We now turn to Williams's argument that the probate court erred in finding that the presumption of revocation was not overcome. The only testimony provided at the hearing regarding the issue of revocation was that of Rhonda Bailey Long who stated that the copy was found with Brown's "personal papers." Williams contends that if Brown had intended to revoke his will, it "would be reasonable to assume a copy of the will would not be kept with his important papers."
As the trier of fact, the probate court was in the best position to determine the credibility of the witnesses. Walker v. Holland (1997),117 Ohio App.3d 775, 791. Given that Rhonda Bailey Long was a beneficiary under the terms of the will, and would not benefit from the intestate succession of assets, the probate court could have reasonably found that her testimony regarding the finding, and location, of the copy lacked credibility. Also, Long indicated that Brown had been a "pack-rat" who tended to keep everything he came across. Thus, the court could have found that the mere fact that Brown kept a copy of his will was not sufficient evidence to overcome the presumption of revocation the original.
Furthermore, the record is devoid of any evidence, let alone clear and convincing evidence, demonstrating that the original will was lost after Brown's death, or before his death but without his knowledge. Therefore, Williams failed to meet his burden as set forth in Haynes, supra.
We conclude that the trial court's implied finding that the will was revoked is not against the weight of the evidence, and we find that the trial court did not err by denying the application to admit the copy to probate. Given the failure of proof with regard to the issue of revocation, we need not address the issue whether the original will was validly executed in accordance with the law. Accordingly, the First and Second assignments of error are overruled.
 III
The Third Assignment of Error is as follows:
 THE COURT ERRED BY NOT ADMITTING THE WILL BASED ON WHETHER OR NOT THE TESTATOR WAS COMPETENT WHEN TESTIMONY WAS NOT OFFERED BY THE MOVING PARTY TO SUGGEST INCOMPETENCE.
Williams contends that the probate court erred by allowing "into evidence questions concerning the testator's state of mind, and competency during the hearing to admit the Will," and by not permitting him to produce witnesses who could testify to the testator's competency.
From our review of the record, the testimony to which Williams objects stems from the following questions asked by the court at the end of the testimony of the attorney who executed the will:
 Q: And you can't, as you sit here today, tell this Court that at the time J.T. Brown signed that he was of sound mind and memory?
 A: I don't have any present recollection of that, but I normally, when I would have signed a will, you know, I would have —
 Q: But you don't remember any conversation, his saying, I own this house and this car, and I have so many children, and this and that, so he — you don't remember him saying those things, do you? In other words, knowing the nature of his bounty and —
 A: Well, that's something I would go into. I have no specific recollection. No, I don't.
We note that no objections were raised at the time the probate court asked these questions. Therefore, we must review this issue under the plain error standard. Ohio courts have established that in civil cases, the plain error doctrine is not favored and should be used in civil proceedings "with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Kudla v. Nolen (Oct. 6, 2000), Montgomery App. No. 18289, unreported, citing Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus.
Regardless whether the probate court erred by engaging in the above-referenced colloquy, we decline to find plain error given the failure to rebut the presumption that Brown revoked his will. There is no evidence to indicate that Brown lacked the very limited mental capacity required for the revocation of a will.
The Third Assignment of Error is overruled.
 IV
All of Williams's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.
[1] R.C. 2107.26 was amended effective October, 1999. However, the appellee asserts, and Williams does not dispute, that the parties agree that the prior version of the statute is applicable in this case, since the decedent's death occurred before the amendment's effective date.