OPINION
{¶ 1} Lori Naughton appeals from the trial court's judgment entry adopting a magistrate's decision that terminated the parties' shared-parenting plan and named appellee Steven S. Portwood as the residential parent of the parties' two children.
 {¶ 2} Naughton advances two assignments of error in this expedited appeal. *Page 2 
First, she contends the trial court erred in designating Portwood as the residential parent. Naughton asserts that the trial court's residential parent designation is against the manifest weight of the evidence, is contrary to law, and constitutes an abuse of discretion. Second, she claims the trial court erred in issuing a seek-work order against her. Naughton argues that she has a right to remain unemployed provided she stays current on her court-ordered support obligation.
 {¶ 3} The record reflects that the parties divorced in April 2001. Naughton and Portwood operated under a shared-parenting plan for their two minor children until July 2004, when they both moved to terminate shared parenting. Those motions resulted in modification of the shared parenting agreement. Thereafter, in October 2005, Naughton moved again to terminate shared parenting and for reallocation of parental rights. Portwood filed a similar motion on May 1, 2006. After conducting an investigation, a guardian ad litem issued a supplemental report in which he opined that keeping the shared-parenting plan intact would be in the best interest of the children. The guardian ad litem also expressed his opinion, however, that Portwood should be named the residential parent if the parties were unwilling or unable to continue with shared parenting.
 {¶ 4} A magistrate subsequently held a July 2006 hearing on the motions to terminate shared parenting and on a contempt motion Naughton had filed based on Portwood allegedly denying her parenting time. At the time of the hearing, the two children were ages nine and eleven. In a December 15, 2006 decision, the magistrate found that continued shared parenting was "untenable." After considering the evidence *Page 3 
and all relevant factors, including those set forth in R.C.3109.04(F)(1), the magistrate also found that it was in the best interest of the children for Portwood to be named the residential parent. The magistrate additionally found Portwood in contempt for denying Naughton parenting time in 2004. Finally, the magistrate set Naughton's child-support obligation at $50 per week and ordered her to seek work. Naughton objected to the magistrate's ruling and filed a one-page memorandum in support. Therein, she essentially argued that the magistrate assigned too much weight to certain evidence while ignoring or assigning too little weight to other evidence. Portwood filed his own objection to the magistrate's contempt finding. On April 20, 2007, the trial court filed a decision and final judgment entry in which it overruled both parties' objections, accepted the magistrate's factual findings, and designated Portwood the residential parent. This timely appeal followed.
 {¶ 5} In her first assignment of error, Naughton contends the trial court's designation of Portwood as the residential parent is against the manifest weight of the evidence, is contrary to law, and constitutes an abuse of discretion. In support, Naughton takes issue with the lower court's weighing of the evidence. In particular, she asserts that the magistrate and the trial court failed to give sufficient weight to Portwood's prior violations of a court-ordered visitation schedule and to his responsibility for deteriorating communication between the parties. Naughton additionally contends the lower court failed to acknowledge the relationship between the children and her new husband, improperly found her responsible for animosity between herself and Portwood's new wife, ignored complaints of inappropriate touching involving one of the *Page 4 
children, and failed to consider the need for the children to change schools if Portwood is named the residential parent.
 {¶ 6} Upon review, we find Naughton's first assignment of error to be unpersuasive. A domestic relations court may terminate a shared parenting order upon the motion of either parent "or whenever it determines that shared parenting is not in the best interest of the child(ren)." R.C. 3109.04(E)(2)(c). Here the magistrate and the trial court terminated shared parenting on the motion of both parties and upon a determination that shared parenting no longer was in the best interest of the children.
 {¶ 7} Once a court terminates a shared parenting order, it is required by R.C. 3109.04(E)(2)(d) to allocate parental rights and responsibilities as if no decree for shared parenting ever had existed. In so doing, it must determine what would be in the best interest of the children. See R.C. 3109.04(E)(2)(d) and R.C. 3109.04(B)(1). The Revised Code contains a list of factors that a trial court must consider when evaluating the best interest of the children. R.C. 3109.04(F)(1)(a)-(j). The factors "relate primarily to the health and well being of the child and the parents." Meyer v. Anderson, Miami App. No. 01CA53, 2002-Ohio-2782. Although a trial court is required to consider these factors, it retains broad discretion in making a best-interests determination. Id.
 {¶ 8} The magistrate in the present case reviewed a lengthy report prepared by the guardian ad litem, who had conducted home visits and interviewed the children and their parents. The magistrate also conducted a hearing that resulted in the filing of a 209-page transcript. The magistrate then filed an eleven-page decision in which she concluded that Portwood should be named the residential parent and legal custodian of *Page 5 
both children. In support of this decision, the magistrate made the following findings, which the trial court adopted:
 {¶ 9} "Both parties have `blended families.' The children have adjusted to their new blended families and appear to be bonded to their stepmother. This positive relationship between the children and their stepmother appears to be the focus of defendant's complaints about the children being with plaintiff. Defendant more than once was critical of the stepmother's involvement with the children, e.g., signing the report card. Defendant does not want the children in plaintiff's home if he is at work. This would be extremely difficult to arrange as plaintiff has an unusual work schedule as a firefighter. Defendant continues to call the stepmother about the children although she has been instructed not to call her.
 {¶ 10} "The report of the guardian ad litem confirms that the defendant has focused her criticism and concerns on the stepmother. The needs of the children are paramount for allocation of parental rights.
 {¶ 11} "In addition to defendant's criticism of plaintiff's wife, the defendant questions plaintiff's financial ability to provide for the children. Plaintiff does have some financial strains on his household income, but he is providing financial support for the children through his employment. Defendant has no employment income.
 {¶ 12} "Plaintiff is involved with the children, their activities and school. Plaintiff indicated the children do well in school. He indicates some problems with parenting time but states that things usually get worked out. Plaintiff has, however, taken unilateral action to keep the children contrary to the ordered parenting time schedule. Continued *Page 6 
disregard for defendant's rights to have contact with the children may result in harsh penalties to plaintiff. The children have positive interaction and interrelationship with their father and stepmother. The children prefer to be in father's home.
 {¶ 13} "Defendant stated she is unaware of the children's preferences. She wishes to limit the stepmother's involvement with the children by controlling plaintiff's access to the children. There is no evidence that the children's involvement with plaintiff's family is not in their best interest. There is, however, evidence that establishes defendant's negativity will not likely facilitate plaintiff's companionship rights as defendant specifically requested to limit plaintiff's access to the children when he is working and left in the care of stepmother.
 {¶ 14} "After considering all of the evidence and all relevant factors, including those listed in R.C. 3109.04(F)(1), it is found to be in the children's best interest that plaintiff be designated residential parent and legal custodian of both children. The children's interaction with plaintiff's family has been positive. They do well in school and view plaintiff's household as `home.' Plaintiff must, however, facilitate parenting time with mom.
 {¶ 15} "It is also found to be in the children's best interest that defendant have parenting time in excess of the Standard Order." (Doc. #187 at 4-6).
 {¶ 16} On appeal, Naughton primarily contends the lower court failed to give sufficient weight to Portwood's occasional violations of a court-ordered visitation schedule and to his responsibility for deteriorating communication between the parties. The magistrate plainly recognized, however, that Portwood at times had interfered with *Page 7 
Naughton's parenting time. Although Portwood claimed he had good reasons for the interference, the magistrate expressly warned him not to continue it. The magistrate and the guardian ad litem also recognized that the ability of Portwood and Naughton to communicate with one another had deteriorated. The record supports a finding that the source of the problem is friction between Naughton and Portwood's new wife and that both women bear some responsibility for the animosity between them. Although Naughton contends the trial court failed to give sufficient weight to these considerations, we find no abuse of discretion.
 {¶ 17} Naughton also contends the lower court failed to acknowledge the relationship between the children and her new husband. Although the record indicates that this relationship is good, the magistrate stressed the strength of the bond between the children and Portwood's new wife. We find no abuse of discretion in this regard. The record fully supports a finding that the children have a much closer relationship with Portwood's new wife than they do with Naughton's new husband. The guardian ad litem found that "although neither of the children seem to be uncomfortable with Mother's spouse, neither of the children spoke of him or their relationship with him in any significant degree and in nowhere near the same positive terms as their relationship with Step-Mother."
 {¶ 18} As for the allegation of inappropriate touching involving one of the children, the trial court acted within its discretion by ignoring it. During the evidentiary hearing, Naughton admitted that the allegation, which involved her daughter and one of Portwood's step children, was investigated by Children's Services and found to be *Page 8 
unsubstantiated.
 {¶ 19} With regard to the need for changing schools, the record reflects that neither of the children expressed any concern about it. The guardian ad litem noted that one of the children was "willing to make such a change" and the other one actually wanted to change schools and was "very interested in making new friends at a new school."
 {¶ 20} Notably, the record also supports the magistrate's finding that the children prefer to be in Portwood's home. Addressing this issue, the guardian ad litem stated: "As to the children's wishes, both children indicated a preference for Father's home and the sense of `being a family' in his household. [One of the children] actually describes going to his Mother's as `time away from home' in order to be with her. There is no doubt that the children care very deeply for their Mother but they clearly have identified their `home base' as Father's residence."
 {¶ 21} In short, the record reflects that both Portwood and Naughton are loving parents who are genuinely interested in the welfare of their children. At the same time, however, the guardian ad litem's report and the hearing transcript fully support the lower court's decision to designate Portwood the residential parent with Naughton receiving liberal visitation. Based on our review of the record, we reject Naughton's argument that the trial court's ruling is against the manifest weight of the evidence, is contrary to law, and constitutes an abuse of discretion. The first assignment of error is overruled.
 {¶ 22} In her second assignment of error, Naughton claims the trial court erred in issuing a seek-work order against her. Although she is unemployed, Naughton insists *Page 9 
that she is not in arrears on her court-ordered child support obligation and that her new husband earns enough money to make the monthly payments.
 {¶ 23} If a child support obligor is unemployed, has no income, and does not have an account at any financial institution, "the court shall issue an order requiring the obligor, if able to engage in employment, to seek employment * * *" R.C. 3121.03(D)(1). Even assuming, arguendo, that the issuance of a seek-work order under R.C. 3121.03(D)(1) was improper in this case, Naughton failed to address the issue in her objections to the magistrate's ruling. Therefore, we may review the trial court's adoption of the seek-work order only for plain error. Civ.R. 53(D)(3)(b)(iv).
 {¶ 24} The plain error doctrine, which originated in criminal cases, is to be applied with "utmost caution" in civil cases. Goldfuss v.Davidson, 79 Ohio St.3d 116, 121, 1997-Ohio-401. It is reserved for "those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." Id. In the present case, Naughton has not argued that plain error exists or even attempted to show that the strict requirements for application of the doctrine have been satisfied. In her assignment of error, Naughton asserts that the trial court erred in issuing a seek-work order, while ignoring her failure to raise the issue through an objection below. In his appellate brief, Portwood correctly points out that Naughton waived all but plain error. Rather than filing a reply brief that attempts to fit her case within the limited scope of the plain error doctrine, Naughton has remained silent and filed no reply at all. Under these *Page 10 
circumstances, we do not find that sua sponte application of the plain error doctrine is necessary to prevent a manifest miscarriage of justice. Nor do we find that the trial court's imposition of a seek-work order, even if erroneous, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. Naughton's second assignment of error is overruled.[1]
 {¶ 25} The judgment of the Montgomery County Common Pleas Court, Domestic Relations Division, is affirmed.
WOLFF, P.J., and DONOVAN, J., concur.
[1] Parenthetically, it seems highly unlikely the trial court would entertain an attempt to enforce the seek-work order while Naughton's husband continues to provide the timely support previously ordered. *Page 1