OPINION
{¶ 1} Plaintiff-appellant, Melissa Bruce, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, dividing property in a divorce proceeding. We affirm the trial court's decision.
 {¶ 2} Melissa and defendant-appellee, Frank Bruce, were married in 1997. In January 2001, the parties formed a plumbing company which began business in June 2001. Frank was in charge of the plumbing work; Melissa was in charge of all the office duties, including making bank deposits and paying suppliers. At the time the company was formed, the parties obtained a line of credit from Fifth Third Bank. The parties used the line of credit for business and personal expenses. The parties also used three credit cards for business and non-business expenses: a MBNA Mastercard (the "MBNA card"), a CitiBusiness Platinum Select Card (the "CitiBusiness card"), and an Advanta Business Card (the "Advanta card"). Melissa's name was on all three cards, Frank's name was not. The company's name was on the Advanta and CitiBusiness cards. All three cards were in Melissa's possession.
 {¶ 3} The parties separated at the end of February 2002. Frank agreed to pay Melissa's living expenses for March and April 2002. During that time frame, Frank paid Melissa's mortgage, water bill, and insurance, as well as credit card bills. On March 12, 2002, Melissa agreed in writing "to hand over all checks to our joint accounts and to not remove any monies from these accounts without prior consent from Frank. I will give Frank any payments that come in for Bruce Plumbing. I will continue to relate all telephone calls that are received for him or the business. I will do any billing deemed necessary."
 {¶ 4} On April 8, 2002, the parties agreed in writing that the company would pay Melissa "a salary of $300 a week, either by giving her cash, putting her on payroll or paying her bills (not to exceed $300/wk)." In return, Melissa agreed to continue all office duties. The agreement was valid until August 31, 2002.
 {¶ 5} On June 12, 2002, without telling Frank and without his consent, Melissa wrote a $2,845.54 check to her daughter from the business checking account. Melissa explained she wrote the check because Frank was threatening to file for bankruptcy and she had heard a rumor that he was going to terminate her. Melissa believed the amount of the check would cover her salary until August 31, 2002. Melissa did not tell Frank about the check until after the fact when he asked to see the ledger books. Melissa testified she left $600 in the business checking account to cover any charges. Frank, however, testified that as a result of Melissa's withdrawal, he was unable to pay all of his suppliers. Melissa was terminated on June 22, 2002.
 {¶ 6} The parties were divorced on April 8, 2003. By decision filed that day, the trial court divided the parties' assets and debts. In particular, the trial court found that the parties owed $35,287.07 on the line of credit, $16,937.79 of which was business related. The trial court ordered Melissa to pay the entire line of credit but ordered Frank to pay Melissa the business portion of the debt. Frank was ordered to pay Melissa in monthly installments for five years and one month. The trial court also found that Melissa engaged in financial misconduct when she issued the $2,845.54 check to her daughter. This appeal follows[1] in which Melissa raises three assignments of error.
 {¶ 7} In her first assignment of error, Melissa argues that the trial court erred by failing to award her interest on the $16,937.79 Frank is to pay her in monthly installments. Melissa asserts she is entitled to a ten percent interest per year under R.C. 1343.03(A). Melissa's first assignment of error is overruled on the basis of this court's decision in Hingsbergen v. Kelley,
Butler App. Nos. CA2003-02-028 and CA2003-02-045, 2003-Ohio-5714 (spouse not entitled to interest on property division award where award does not fall under language of R.C. 1343.03[A]).
 {¶ 8} In her second assignment of error, Melissa argues that the trial court erred by ordering that she pay three specific debts, to wit, (1) a $4,000 debt that was transferred from the MBNA card to the CitiBusiness card, (2) $2,127.58 for her February and March 2002 personal expenses, and (3) a $2,600 computer which was purchased for the company with the line of credit.
 {¶ 9} A trial court has wide latitude when dividing marital assets and liabilities. Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 95. An appellate court will not substitute its judgment for that of the trial court unless, viewing the property division in its entirety and considering the totality of the circumstances, the trial court's property division amounts to an abuse of discretion. See Guenther v. Guenther, Butler App. No. CA2001-04-072, 2002-Ohio-376, citing Briganti v. Briganti
(1984), 9 Ohio St.3d 220. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Unequal property division, in and of itself, does not constitute an abuse of discretion. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 353.
 {¶ 10} With regard to the first challenged debt, Melissa testified that the parties agreed it would be wise to transfer $4,000 from the MNBA card, which had an 18 percent interest rate, to the CitiBusiness card, which had a zero percent introductory interest rate. The transfer occurred early in May 2002. Melissa also testified that following their April 2002 agreement, the parties agreed she would continue using the MBNA card for her expenses. In its decision, the trial court stated:
 {¶ 11} "[Melissa] argues the remaining debt on the MBNA MasterCard is business debt because she transferred $4,000.00 to a Citi-Bank Platinum Card. * * * Evidence reveals the MBNA MasterCard was not used exclusively for the plumbing business. As previously stated, in order to determine the extent of personal use the Court entered the MBNA MasterCard account into an Excel spreadsheet. The Court assigned the debt amounts to the categories of marital, [Melissa's] expenses, and business, based upon the Court's credibility determination of the witnesses. * * * The Court's determination to divide payments, in this manner, is consistent with [Melissa's] argument that the transfer of $4,000.00 to the Citi-Bank Platinum Card was to pay her personal debt."
 {¶ 12} With regard to Melissa's February and March 2002 personal expenses, the record shows that Frank considered any non-business expenses incurred prior to their February 2002 separation to be marital, and that he agreed to pay Melissa's living expenses for March and April 2002. As previously noted, during that time frame, Frank paid Melissa's mortgage, water bill, and insurance, as well as credit card bills. The Excel spreadsheet prepared by the trial court for all of the expenses, business and otherwise, charged on the MBNA card shows that the trial court found Melissa's personal expenses to be $0 by the end of February 2002. By contrast, the spreadsheet attributes $2,127.58 to Melissa as her personal expenses by the end of March 2002. As previously noted, the trial court assigned the various debts on the MBNA card based upon the parties' testimony and the trial court's "credibility determination of the witnesses."
 {¶ 13} With regard to the $2,600 computer, the record shows that the parties bought the computer with the line of credit. Frank testified that the parties agreed for Melissa to keep the computer after they separated. Melissa testified that she at first kept the computer because she was using it for office purposes. She further testified that after she was terminated, she offered to give it back to Frank who refused it. It is undisputed that the computer is still in Melissa's possession. As previously noted, while Melissa was ordered to pay the remaining balance of the line of credit, Frank was ordered to reimburse her for the business portion of the debt.
 {¶ 14} Upon reviewing the trial court's property division in its entirety and considering the totality of the circumstances, we cannot say that the trial court's decision to attribute the three disputed debts to Melissa was so unreasonable, arbitrary, or unconscionable as to amount to an abuse of discretion. We therefore find no abuse of discretion in the trial court's division of the debts. Melissa's second assignment of error is overruled.
 {¶ 15} In her third assignment of error, Melissa argues that the trial court erred by finding she engaged in financial misconduct when she issued the $2,845.54 check to her daughter. Melissa asserts that a spouse does not engage in financial misconduct "when she pays herself a salary in accordance with the parties' past practices and pursuant to a contract with her husband, and when she pays that salary because the husband threatens to file bankruptcy[.]"[2]
 {¶ 16} Financial misconduct includes "dissipation, destruction, concealment, or fraudulent disposition of assets[.]" See R.C. 3105.171(E)(3). In its decision, the trial court found that "the parties entered into an employment contract on April 8, 2002. However, [Melissa] engaged in financial misconduct when she issued the check to her daughter. Regardless of her reasons, [Melissa] breached the terms of her employment by liquidating the business account."
 {¶ 17} We agree with the trial court. In violation of her March 2002 agreement not to remove any money from the parties' joint accounts without prior consent from Frank, Melissa issued the check without telling Frank and without his consent. Melissa did not tell Frank about the check until after the fact when Frank asked to see the ledger books. As a result of Melissa's action, Frank was unable to pay all of his suppliers. Melissa did, therefore, commit financial misconduct. See Donnelly v.Donnelly, Greene App. No. 2002-CA-53, 2003-Ohio-1377 (husband committed financial misconduct when he outright transferred property and assets without wife's knowledge or approval).
 {¶ 18} We note that although the trial court found financial misconduct on Melissa's part, it did not penalize her for her conduct. In fact, the trial court found that she was entitled to $2,880 for her services, and thus entitled to the sum she withdrew. In light of the foregoing, Melissa's third assignment of error is overruled.
 {¶ 19} Judgment affirmed.
Walsh and Valen, JJ., concur.
[1] We wish to point out that effective January 1, 2004, appellate briefs filed in this court and prepared with word processing software must have a minimum font size of 12. Loc.R. 11(A). Typewritten briefs are to use a similar type size. Id. Frank's appellate brief, which was filed before January 2004, was written in a font size of eight or nine. This not only makes it more difficult to read, it also diminishes the persuasive value of the finished product. We also point out that the spelling checker does not catch spelling mistakes when the words are written in capital letters. As a result, misspelled words such as "proedural," "staemet," "assisgnment," "reviw," and "appelalnt's" were able to find their way in Frank's appellate brief. As Truman Capote once said about another author's book, "`That's not writing, it's typing.' In other words, make your briefs readable." See Gillum v. Malishenko, Greene App. No. 95 CA 1.
[2] Melissa also briefly argues that because the April 2002 written agreement superseded her March 2002 written agreement, she acted appropriately under the circumstances. This issue was not raised in the trial court. It is well-established that issues raised for the first time on appeal are not reviewable. SeeGoldfuss v. Davidson, 79 Ohio St.3d 116, 1997-Ohio-401.