OPINION *Page 2 
{¶ 1} On June 14, 1968, appellant, Edward Ahwajee, and appellee, Lynn Ahwajee, were married. On October 13, 2006, appellee filed an amended complaint for divorce. A bench trial commenced on April 17, 2007. By final entry filed April 18, 2007, the trial court granted the parties a divorce on the grounds of incompatibility.
 {¶ 2} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 3} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO APPOINT A GUARDIAN AD LITEM TO PROTECT THE INTERESTS OF THE DEFENDANT WHEN HE HADE (SIC) BEEN DECLARED INCOMPETENT BY A PSYCHIATRIST."
 II {¶ 4} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING THE TESTIMONY OF THE DEFENDANT WHEN HE WAS DECLARED INCOMPETENT BY A PSYCHIATRIST AND DID NOT HAVE THE REQUISITE MENTAL CAPACITY TO TESTIFY TO THE GROUND OF IMCOMPATIBILITY (SIC) AT TRIAL."
 III {¶ 5} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING THE DIVORCE ON THE GROUND OF INCOMPATIBILITY WHEN AT LEAST ONE OF THE PARTIES DID NOT AGREE THAT THE PARTIES WERE INCOMPATIBLE." *Page 3 
 I {¶ 6} Appellant claims the trial court erred in failing to appoint him a guardian ad litem to protect his interests because he had been declared incompetent by a psychiatrist. We disagree.
 {¶ 7} Appellant requested the appointment of a guardian ad litem, and the trial court appointed Cynthia Nolte as guardian on November 28, 2006. Appellant argues the guardian subsequently withdrew however, there is nothing in the record to reflect this fact or whether the trial court was aware of any withdrawal. There was no mention of the need for a guardian ad litem at trial.
 {¶ 8} Attached to appellee's April 18, 2007 trial brief is a report of Mary Beth Spitznagel, Ph.D. which includes her evaluation of appellant as follows:
 {¶ 9} "Currently, Mr. Ahwajee initially reported that he has not noticed any changes in memory or other cognitive functions; however, when this examiner read to him the specific complaints he made in this regard last year, he stated that he was experiencing some problems with memory and orientation at that time, but he believes this has since improved. He reports that since his previous evaluation, he poked his wife with an umbrella (May 2005), and was hospitalized on the St. Thomas Hospital geropsychiatric unit after she contacted police. Brain CT at that time (05/19/2006) revealed no acute changes. He was discharged from the hospital to Cardinal Village Extended Care Facility, where he is currently living. Mr. Ahwajee's wife has filed for divorce. He states he is planning to move out of Cardinal Village, and that he would like to purchase a 5-bedroom home, and invite his son's family to move in with him. He reported to this examiner that he has no difficulties completing activities of daily living. *Page 4 
He passed a driving evaluation (07/17/2006) with no restrictions, and has returned to driving. He states that he organizes and remembers to take his medications independently, and that he has no problems with this. He initially reported that he also manages his own finances, but when asked for details, reported that his wife is paying all bills, and she writes him checks for spending money."
 {¶ 10} During trial, the trial court had the opportunity to observe appellant and hear his testimony and therefore determine appellant's capacity to testify. Given the fact that no one addressed the issue of no guardian ad litem report, we find the issue is not preserved for appeal:
 {¶ 11} "Although in criminal cases `[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,' Crim. R. 52(B), no analogous provision exists in the Rules of Civil Procedure. The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." (Emphasissic.) Goldfuss v. Davidson, 79 Ohio St.3d 116, 1997-Ohio-401,121.
 {¶ 12} We find no manifest miscarriage of justice.
 {¶ 13} Assignment of Error I is denied. *Page 5 
 II {¶ 14} Appellant claims the trial court erred by permitting him to testify when in fact he was not competent to testify. We disagree.
 {¶ 15} As we noted in Assignment of Error I, no one suggested appellant's lack of competency to testify at trial. Evid.R 601 presumes competency, and lack of competency must be established:
 {¶ 16} "Every person is competent to be a witness except:
 {¶ 17} "(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 18} The initial determination is vested with the trial court. Appellant's own trial counsel offered him as a witness. T. at 39. Appellant testified as to the marital residence, its current value and mortgage. T. at 41-42. He was aware of the depressed real estate market. T. at 42. Appellant testified about his military career, the parties' investment account, the vehicles they owned, and his pension benefits. T. at 42-45. As noted in Dr. Spitznagel's reported cited supra, appellant still drives, as he has a driver's license without restrictions. T. at 50.
 {¶ 19} We find nothing in the record to indicate appellant's lack of competency to testify. Appellant attaches to his appellate brief at Exhibit C a "Statement of Expert Evaluation" dated October 11, 2006 for a guardianship application, but there is no indication in the record that it was ever presented to the trial court.
 {¶ 20} Assignment of Error II is denied. *Page 6 
 III {¶ 21} Appellant claims the trial court erred in granting the parties a divorce when the issue of incompatibility was in dispute. We disagree.
 {¶ 22} R.C. 3105.01(K) specifically states a court of common pleas may grant a divorce for "[i]ncompatibility, unless denied by either party."
 {¶ 23} In his answer filed October 17, 2006, appellant "specifically and emphatically" denied paragraph 3 of appellant's complaint which stated, "Plaintiff states that she is entitled to a divorce from the Defendant on one or more grounds as set forth in Section 3105.01, Ohio Revised Code."
 {¶ 24} The trial court granted the divorce on the grounds of incompatibility, finding the "parties agreed that they were incompatible." See, Finding of Fact No. 3 and Conclusion of Law No. 1 filed April 18, 2007. As explained by our brethren from the Fourth District in Lehman v. Lehman (1991), 72 Ohio App.3d 68, 71:
 {¶ 25} "Incompatibility, under R.C. 3105.01(K), is really not a `ground' that has to be proven so much as a status that must be agreed on by both parties; it is a consensual ground that is not intended to be litigated. Baldwin's Ohio Domestic Relations Law (Supp. 1989) 22, Section 23.03(L). The requirement that the allegation of incompatibility not be denied by either party was included to prevent the unilateral declaration of incompatibility by one party which would otherwise give the court the jurisdiction to terminate the marriage and make all concomitant orders."
 {¶ 26} In Vanatta v. Aten (March 20, 1995), Licking App. No. 94 CA 00064, this court concurred with the Lehman decision, stating the following: *Page 7 
 {¶ 27} "Appellant acknowledges that appellee denied the issue of incompatibility in the pleadings. Further, appellant acknowledges thatLehman v. Lehman (1991), 72 Ohio App.3d 68, implies that such a general denial bars the introduction of said issue into evidence. We concur with the Lehman case that the legislature did not intend to allow the issue of incompatibility to be fought out in the arena of the courtroom. Therefore, the trial court is correct that the issue of incompatibility cannot be litigated."
 {¶ 28} As stated in appellant's brief at 13, "in order for the Court to grant the divorce on the grounds of incompatibility it must have the testimony and the agreement of both parties."
 {¶ 29} During the trial, appellee testified as follows:
 {¶ 30} "Q. Now because of what all you've testified to, is it your wish to have this Court divorce you from Ed?
 {¶ 31} "A. It's not my wish exactly, it's the only thing that I can see to keep Ed from living with me and keeping me safe." T. at 17.
 {¶ 32} Appellant testified as follows:
 {¶ 33} "Q. Okay. And you heard your wife's testimony earlier, —
 {¶ 34} "A. Yeah.
 {¶ 35} "Q. and you agree that you and wife are incompatible, don't you?
 {¶ 36} "A. We're incompatible to the sense that I don't know why she thinks I will hurt her.
 {¶ 37} "Q. Okay, but you agree you've become incompatible, you're now living apart and you just —
 {¶ 38} "A. Yes. *Page 8 
 {¶ 39} "Q. haven't been able to get along with each other, isn't that right?
 {¶ 40} "A. Yeah.
 {¶ 41} "Q. For whatever reason.
 {¶ 42} "A. For whatever reason.
 {¶ 43} "Q. For whatever reason, okay. And so you don't have any objection to a divorce being granted on that basis then —
 {¶ 44} "A. No." T. at 40-41.
 {¶ 45} Although appellant denied any of the statutory reasons for a divorce in his answer, he nonetheless consented to a divorce at trial on the basis of incompatibility, and as we found in Assignment of Error II, there was no evidence of appellant's lack of competency to testify.
 {¶ 46} Assignment of Error III is denied. *Page 9 
 {¶ 47} The judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division, is hereby affirmed.
 Farmer, J. Hoffman, P.J. and Edwards, J. concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division, is affirmed. *Page 1