[Cite as *In re L.T.*, 2025-Ohio-1719.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF: L.T.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Andrew J. King, J.
Hon. David M. Gormley, J.

Case No. 2024CA00203

O P I N I O N

CHARACTER OF PROCEEDINGS: Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2022JCV01059

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: May 12, 2025

APPEARANCES:

For Plaintiff-Appellee

BRANDON J. WALTENBAUGH
Stark County JFS
402 2nd Street, S.E.
Canton, Ohio 44702

For Defendant-Appellant

RICHARD D. HIXSON
3808 James Court, Suite 2
Zanesville, Ohio 43701

GAL for Appellant

DONOVAN HILL
122 Market Avenue, North, Suite 101
Canton, Ohio 44702

GAL for L.T.

KRISTIN ZALENSKI
122 Central Plaza, North
Canton, Ohio 44702

*Hoffman, P.J.*

**{¶1}** Appellant L.W. (hereinafter "Father") appeals the judgment entered by the Stark County Common Pleas Court, Family Court Division, granting permanent custody of his child, L.T., to Appellee Stark County Department of Job and Family Services (hereinafter "SCDJFS").

STATEMENT OF THE FACTS AND CASE

**{¶2}** L.T. was born on September 9, 2022. On September 14, 2022, SCDJFS filed a complaint alleging L.T. was abused and dependent. SCDJFS moved to dismiss the allegation of abuse, and the child's mother (hereinafter "Mother") stipulated to a finding of dependency. The child was placed in the temporary custody of SCDJFS.

**{¶3}** Mother had prior pending cases with SCDJFS, which resulted in SCDJFS receiving permanent custody of four of Mother's children upon Mother's stipulation. Mother previously had given birth to twins who tested positive for drugs at birth.

**{¶4}** Father's case plan required he complete a parenting evaluation and follow all recommendations. Father did not complete the evaluation. Father also failed to complete a mental health evaluation as required by the case plan. Father was hospitalized three times during the pendency of the case for mental health concerns. Initially, Father participated in supervised visitation; however, the visits were not productive, and the child avoided Father during the visits. Father did not visit with the child from December of 2022 to April of 2023, a period of more than ninety days.

**{¶5}** L.T. was placed with his maternal great-aunt and her daughter. L.T. is bonded with his custodians, and is able to visit multiple times weekly with his siblings, who are placed with other family members. L.T.'s great-aunt wishes to adopt the child.

**{¶6}** SCDJFS moved for permanent custody of L.T. on August 10, 2023. The case proceeded to a hearing on March 29, 2024. Mother failed to appear for the hearing. Father appeared at the hearing. The trial court found Father abandoned the child due to his lack of contact with the child for more than ninety days, and found Father's severe and chronic mental illness rendered him incapable of providing a home for the child within one year of the court date. The trial court further found the child could not be placed with Father within a reasonable time. The trial court found permanent custody to be in the best interest of L.T., and granted permanent custody of L.T. to SCDJFS.[1] It is from the March 29, 2024 judgment of the trial court Father prosecutes his appeal, assigning as error:

I. THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN [SIC] WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INQUIRE DURING THE PERMANENT CUSTODY TRIAL WHETHER THE CHILD WAS A MEMBER OF OR ELIGIBLE FOR MEMBERSHIP IN A FEDERALLY RECOGNIZED INDIAN TRIBE, PURSUANT TO THE INDIAN CHILD WELFARE ACT OF 1978.

---

[1] Mother appealed to this Court, and we affirmed the trial court's judgment granting permanent custody to SCDJFS as to Mother. *In the Matter of L.T.*, 2024-Ohio-2700 (5th Dist.).

I.

**{¶7}** In his first assignment of error, Father argues the trial court's finding permanent custody was in the best interest of the child is not supported by clear and convincing evidence and is against the manifest weight of the evidence. Father also argues because the child was placed with a relative, the same objective could have been achieved through an award of legal custody to the great-aunt rather than permanent custody to SCDJFS. We disagree.

**{¶8}** R.C. 2151.414(D) sets forth the factors to be considered by the trial court in considering whether permanent custody is in the child's best interest:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶9}** Because R.C. 2151.414 requires a juvenile court to find by clear and convincing evidence the statutory requirements are met, the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent custody determination, as appropriate depending on the nature of the arguments which are presented by the parties. *In re Z.C.*, 2023-Ohio-4703, ¶ 11. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to

be established." *Id.* at ¶ 7, *quoting Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶10} Wanda Pounds, the caseworker assigned to the case by SCDJFS, testified the child has been placed in the home of his great-aunt and her daughter since soon after his birth. He is able to visit with his siblings regularly, as they are placed with other family members. The child is very bonded to his great-aunt, and she wants to adopt the child. Ms. Pounds testified during visits with Father, the child wanted space from Father, and the child was more bonded to the aide assisting in visitation than to Father. Further, Father failed to visit from December of 2022, to April of 2023. Ms. Pounds testified the benefit of permanency for the child outweighed any detrimental impact caused by severing Father's parental rights and a grant of permanent custody to SCDJFS was in the child's best interest. In addition, the guardian ad litem for the child supported the motion for permanent custody. We find SCDJFS presented sufficient evidence to support the trial court's finding permanent custody was in the child's best interest. We also find the judgment was not against the manifest weight of the evidence.

{¶11} Father argues a less restrictive alternative to permanent custody existed because the child's great-aunt could assume legal custody. However, there was no motion for legal custody pending before the trial court, and the evidence before the court established permanent custody was in the best interest of the child.

{¶12} The first assignment of error is overruled.

II.

{¶13} In his second assignment of error, Father argues the trial court committed plain error in failing to inquire as to whether the child was a member of or eligible for

membership in a federally recognized Indian tribe pursuant to the Indian Child Welfare Act of 1978. We disagree.

**{¶14}** The Indian Child Welfare Act was enacted "for the protection and preservation of Indian tribes and their resources." 25 U.S.C.A. 1901(2). Congress was concerned because "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." 25 U.S.C.A. 1901(4). Congress acknowledged "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe." 25 U.S.C.A. 1901(3). Therefore, state courts are required to "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record." 25 C.F.R. 23.107(a). "A court's failure to identify Indian children can nullify court proceedings that have not been conducted in accordance with the Act." *In re L.M.,* 2024-Ohio-5549, ¶ 13 (12th Dist.), *citing* Adm.Code 5101:2-53-02.

**{¶15}** Because Father did not raise this issue in the trial court, he has forfeited all but plain error on appeal. *In re S.M.,* 2025-Ohio-34, ¶ 15 (9th Dist.). Civil plain error is to be recognized only in the exceptional case in which the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson,* 79 Ohio St.3d 116 (1997), syllabus. In applying the doctrine, reviewing courts "must proceed with the

utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Id.* at 121.

{¶16} The permanent custody hearing transcript is devoid of any inquiry as to whether the child was an Indian child. However, the Act states the inquiry is to be made "at the commencement of the proceeding." Father has not provided this Court with transcripts of the initial hearings held in this case, beginning with the shelter care hearing. Without a transcript to review, we presume the trial court conducted an inquiry at the commencement of the proceeding. *In re K.Y.*, 2025-Ohio-1117, ¶ 35 (5th Dist.)    In addition, the case plans, which were reviewed and agreed to by Father and adopted by the trial court as orders in this case, indicate the child is not protected by the Act.

{¶17} As cited by Father in his brief, Ohio courts have nullified determinations terminating parental rights and granting permanent custody to a government agency in cases where the Act has not been followed. *In re L.M.*, 2024-Ohio-5549 (12th Dist.); *In re D.E.,* 2021-Ohio-524 (10th Dist.); *In re R.G.*, 2016-Ohio-7897 (8th Dist.)  We find these cases to be distinguishable from the instant case. In *L.M.*, there was no indication the mother was put on notice of the potential for the Act to apply. In the instant case, Father was put on notice via the case plans. In *D.E.,* the trial court failed to make a proper inquiry after the mother claimed to have Native American heritage in her background. In the instant case, there was no indication of Native American heritage. In *R.G.*, the trial court asked the caseworker at the initial hearing if the child had any Native American ancestry,

but did so outside the hearing of the child's parents. In the instant case, in the absence of a transcript of the initial hearing wherein Father was present, we must presume Father was asked by the trial court about Native American ancestry. *K.Y.,* 2025-Ohio-1117 at ¶ 37.

{¶18} Even assuming arguendo the trial court failed to properly inquire, based on the state of the record before us, we cannot say but for this "plain error" the Act would have been found to apply. Father failed to object to the representation in the case plan stating the child is not protected by the Indian Child Welfare Act, and has at no point in the proceedings alleged the child was protected by the Act.

{¶19} The second assignment of error is overruled.

{¶20} The judgment of the Stark County Common Pleas Court, Family Court Division, is affirmed.

By: Hoffman, P.J.
King, J. and
Gormley, J. concur