[Cite as *VSG Trucking, L.L.C. v. The Wingates, L.L.C.*, 2014-Ohio-1384.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

VSG Trucking, LLC,                                    :

      Plaintiff-Appellee,                       :            No. 13AP-859
                                                                          (M.C. No. 2012 CVF 011311)
v.                                                              :
                                                                          (REGULAR CALENDAR)
The Wingates, LLC,                                   :

      Defendant-Appellant,                  :

Oakbrook Manor, LLC et al.,                     :

      Defendants-Appellees.               :

---

D E C I S I O N

Rendered on March 31, 2014

---

*Gerald F. Bohan*, for appellee VSG Trucking, LLC.

*Isaac Wiles Burkholder & Teetor, LLC*, and *Kerry T. Boyle*, for appellant The Wingates, LLC.

---

APPEAL from the Franklin County Municipal Court.

BROWN, J.

{¶1} The Wingates, LLC, defendant-appellant, appeals the judgment of the Franklin County Municipal Court, in which the court granted judgment in favor of VSG Trucking, LLC ("VSG").

{¶2} Wingates owns an apartment complex named Oakbrook Manor Apartments ("Oakbrook"). Matrix Realty Group ("Matrix") managed Oakbrook during the time relevant to this matter. VSG is a business that, among other things, provides snow and ice

removal services for commercial properties. On October 31, 2011, Wingates and VSG entered into a contract, in which VSG agreed to provide snow and ice removal services for Wingates at the Oakbrook property for the winter of 2011-2012. Coral Sue Mollette was an employee of Matrix and the property manager for Oakbrook at the time, and signed the contract. The contract provided for "[a]utomatic salt applications for accumulations less than 1" or when slippery conditions exist in the Columbus, Ohio Area." The section setting forth the price for ice control provided for "Ice Control for Roadways, Parking Lots & Sidewalks (As needed)." The contract also provided for a "finance charge" of five percent per month for invoices not paid within 15 days.

{¶3} VSG applied 4,000 pounds of salt on January 2, 13, 18, and 20, and 5,500 pounds of salt on January 21, 2012, at the Oakbrook property due to icy road conditions. VSG sent two invoices to Wingates for these services: one for $4,697 for the first two salt applications, and one for $7,926.19 for the last three salt applications. Wingates refused to pay either invoice, claiming at trial that the salt applied on these dates was unnecessary.

{¶4} On March 29, 2012, VSG filed a complaint against Wingates; Oakbrook Manor, LLC, Showgates, LLC, and Matrix Realty Group, Inc., alleging breach of contract. Showgates was the subsequent owner of Oakbrook.

{¶5} On June 25, 2013, a trial was held before a magistrate. At the conclusion of evidence, the trial court dismissed Showgates as a party. On August 28, 2013, the magistrate filed a decision in which the magistrate recommended that the court grant judgment in favor of VSG for $12,623.10 against Wingates but deny judgment to VSG on the five percent "finance charges." No parties filed objections to the magistrate's decision, and the trial court adopted the magistrate's decision on September 12, 2013. Wingates appeals the trial court's judgment, asserting the following assignment of error:

> The trial court erred in adopting the Magistrate's Decision, which contained plain error in the application of law to the facts in the record.

{¶6} Wingates argues in its assignment of error that the trial court committed plain error when it granted judgment in favor of VSG. We first note that Wingates failed to file objections to the magistrate's decision. Civ.R. 53(D)(3)(b)(iv) provides, in pertinent part, that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically

designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Thus, the failure to file objections to a magistrate's decision under Civ.R. 53(D)(3)(b) constitutes the waiver of the right to appellate review of all but plain error. *Buford v. Singleton*, 10th Dist. No. 04AP-904, 2005-Ohio-753, ¶ 6. In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity or public reputation of the judicial process itself. *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶7} Wingates argues that, except for the self-serving testimony of VSG's owner and employee, there was no evidence that conditions existed on those dates that would allow ice to form. Wingates maintains that the magistrate failed to consider a weather report it submitted as evidence from the United States Department of Commerce National Oceanic & Atmospheric Administration ("NOAA"). The report was from the NOAA's weather station at Bolton Field Airport, which is 4.3 miles away from Oakbrook and the nearest weather station to Oakbrook. According to the weather report submitted, asserts Wingates, there was no precipitation on the dates VSG applied salt, except for a negligible .01 of an inch on January 2, 2012. Wingates contends that it is not plausible that 21,500 pounds of salt would have been necessary on these five dates, given nearly the lack of precipitation and the lack of plowing necessary on those dates. Wingates also notes that it never specifically requested service on any of the dates in question. Wingates further argues that the contract required salt applications "as needed," and the lack of precipitation demonstrates that there was no need for salt on these days.

{¶8} However, the trial court apparently believed the testimony of VSG's witnesses. At the hearing, Joshua Jordan, an employee for Buckeye Protection Services, a security company, testified that, from his observation as a supervisor at Oakbrook, it was necessary for VSG to apply salt on the days it did and the conditions warranted treatment although he admitted that he was only personally present on two of the days in question. He testified that, on one of the days in question, there was a lot of ice on the roadways and he called VSG to ask if they were coming to apply salt.

{¶9} James Myers, a snowplow driver for VSG, testified that they never applied salt at Oakbrook when it was not needed. He said it did not benefit VSG to over salt any

properties because VSG would then risk running out of salt for other contracts and it would be more trouble than it was worth to have to go back and get more salt. He said the lots actually had snow on them on some of the days in question when they salted them.

{¶10} Virgil Camp, the owner of VSG, testified that sometimes certain areas of town would get hit with snow or ice while others would not, so he would often have to drive to Oakbrook first to see if it needed salt before returning with the snowplows. He testified that no one ever called him to treat Oakbrook because it was not a "will-call" contract. He said he never performed unnecessary work at Oakbrook. Although Camp agreed there has to be some precipitation to have ice form and the weather reports submitted by Wingates showed very little to no precipitation on the days he applied salt, he testified that there was a dusting of snow that required salt on those days.

{¶11} Wingates's argument on appeal rests solely upon credibility. Wingates would like this court to find the magistrate's credibility determination was wrong. However, the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230 (1967). Because the factfinder, in this case the magistrate, had the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals requires that a substantial deference be extended to the factfinder's determinations of credibility. *State v. Lawson*, 2d Dist. No. 16288 (Aug. 22, 1997). This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.

{¶12} Wingates's argument depends largely on the NOAA weather report. We note that, despite the suggestion by Wingates' counsel to Camp and Camp's concurrence at trial that the report shows .01 of an inch of precipitation on January 2, 2012, the chart actually shows no precipitation for that day. The chart also shows no precipitation on the other days in question. However, the magistrate believed the testimony of VSG's witnesses. Jordan, Myers, and Camp all testified that Oakbrook's roadways were icy and in need of salt on the days in question. Myers and Camp testified that they never applied salt when it was not necessary, and Myers said it did not benefit them to apply salt in excess. Furthermore, the weather report was taken at a weather station 4.3 miles away from Oakbrook and was not conclusive as to the road conditions at Oakbrook. *See State v. Hubbard*, 10th Dist. No. 88AP-206 (Mar. 30, 1989) (affirming the trial court's reasoning

that evidence of weather conditions recorded at Port Columbus airport did not tend to make more or less probable the weather conditions on the west side of Columbus, and finding the relationship between weather conditions at the two places tenuous). In addition, VSG submitted copies of text messages into evidence, showing Camp had texted Jordan on each of the days VSG was going to salt the property, and Jordon never questioned the need for salting in any of his replies. In fact, on January 21, 2012, Jordan texted Camp and specifically asked if VSG was going to salt the property that day. Thus, we cannot find that the testimony the magistrate relied upon was wholly irreconcilable with the NOAA weather report.

{¶13} We also note that, although Wingates raises an argument related to VSG's discretion to determine that ice control was needed on the five days in question, the "automatic salt applications" provision in the contract clearly gave VSG the sole discretion to determine when it would apply salt. The contract provides for automatic salt application for accumulations of less than one inch or when slippery conditions exist in the Columbus, Ohio area. Although Wingates also points to the phrase in the contract providing "Ice Control for Roadways, Parking Lots & Sidewalks (As needed)" to limit VSG's discretion to "As needed[,]" this phrase is more of a descriptive heading within the price section of the contract rather than a term of the contract. Nevertheless, because Camp credibly testified that he believed the roadways at Oakbrook were icy and in need of salt, his determination met both provisions in the contract. Furthermore, Camp testified that this was not a will-call account, which would have placed the discretion with Wingates to determine when services were needed. Therefore, for the foregoing reasons, we find the magistrate and trial court committed no plain error, and we overrule Wingates' assignment of error.

{¶14} Accordingly, Wingates' assignment of error is overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

_____