[Cite as *Parks v. Parks*, 2016-Ohio-3218.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| TASHA L. PARKS, (DECEASED) BY PAM MORTENSEN, NEXT FRIEND, | : | CASE NO. CA2015-12-223 |
|  | : |  |
|    Appellee, | : | O P I N I O N 5/31/2016 |
|  | : |  |
|   - vs - | : |  |
|  | : |  |
| WARREN E. PARKS, | : |  |
|  | : |  |
|    Appellant. | : |  |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR89-11-2056

Brian J. Davidson, Government Services Center, 315 High Street, 7th Floor, Hamilton, Ohio 45011, for appellee, Butler County Child Support Enforcement Agency

Warren E. Parks, #116977, Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064, appellant, pro se

**S. POWELL, P.J.**

{¶ 1} Appellant, Warren E. Parks, appeals from the decision of the Butler County Court of Common Pleas, Domestic Relations Division, denying his motion for a judicial hearing after he was found in default regarding the child support arrears he owed to appellee, the Butler County Child Support Enforcement Agency ("CSEA"). For the reasons outlined

below, we affirm.

{¶ 2} On April 16, 2012, a notice of default was sent to Parks informing him he owed $3,140.88 in child support arrears to CSEA that would be paid in monthly installments of $88.40. On April 26, 2012, Parks filed a request for an administrative hearing in order to dispute the amount of arrearage and the monthly arrearage payments. Parks also included a handwritten letter requesting "this administrator to stop sending notice cause the obligor is incarcerated and cannot make no payments[.]" It is undisputed that Parks has been incarcerated in Indiana throughout the pendency of this matter.

{¶ 3} On May 21, 2012, an administrative hearing officer issued a recommendation upholding the default finding. Two days later, on May 23, 2012, a notice was sent to Parks informing him of the recommendation and notifying him that he had ten days to request a judicial hearing on the matter if he felt the recommendation was incorrect. The notice further provided that "[f]ailure to respond to this notice within the given ten days will result in the issuance of an order from the court based on the Administrative Hearings Officer's finding and recommendation."

{¶ 4} Over three years later, on October 2, 2015, Parks filed a motion requesting a judicial hearing on the administrative hearing officer's May 21, 2012 recommendation. One month later, on November 2, 2015, a magistrate denied Parks' motion for a judicial hearing as untimely. The magistrate also dismissed without prejudice Parks' motions to review and vacate his child support order, as well as his motion to appear in forma pauperis. Thereafter, when Parks failed to file any objections to the magistrate's decision, the trial court issued an entry affirming and adopting the magistrate's decision in its entirety on November 20, 2015.

{¶ 5} Parks now appeals from the trial court's decision, raising two assignments of error for review. For ease of discussion, Parks' two assignments of error will be addressed together.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED BY UP HOLDING A VOID JUDGMENT BY A MAGISTRATE JUDGE.

{¶ 8} Assignment of Error No. 2:

{¶ 9} THE TRIAL COURT ERRED WITHOUT AUTHORITY, ITS JUDGEMENT ORDER ARE (sic) REGARDED AS NULLITIES.

{¶ 10} In his two assignments of error, Parks makes a number of arguments claiming the trial court acted without jurisdiction in order to continue a grand conspiracy against him by allowing the CSEA to "extract revenue" and "steal money" from him when there is no "agreement with [his] name on it [where he] agreed to pay any loan or money back to the State of Ohio," nor "any document to where they gave [him] real money that the Constitution requirements (sic)." Parks further argues this court cannot accept the trial court's decision because "to do so will adopt a form of slavery, the King Court of the land state that this land is rule by law, not a slave master standard."

{¶ 11} After a thorough review of the record, and in construing Parks' arguments in the most generous way possible, we find no error in the trial court's decision. As noted above, Parks' request for a judicial hearing was clearly untimely as it was filed well over three years late. Moreover, as the record plainly reveals, Parks never filed any objections to the magistrate's decision as required by Civ.R. 53(D)(3)(b)(iv). As that rule states:

> Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

{¶ 12} Nevertheless, albeit part of his reply brief, Parks claims the trial court committed plain error by issuing a decision overruling his various motions when it lacked jurisdiction to

- 3 -

do so. Parks has cited no relevant authority in support of this position, nor has our own research uncovered anything that would give any credence to such an assertion.[1] Therefore, contrary to Parks' claim otherwise, this case is clearly not one of those extremely rare cases where exceptional circumstances require the finding of a plain error to prevent a manifest miscarriage of justice. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). In so holding, we note that nothing about this decision overturns "a precedent order" from the Ohio Supreme Court as Parks now suggests. Accordingly, having found no error with the trial court's decision, Parks' two assignments of error are overruled.

{¶ 13} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.

---

1. Parks alleges the trial court committed plain error by acting without jurisdiction because it operates "in trust law" that is based on "ecclesiastical cannon law," ritualism, superstition, and Satanism. Parks also argues this matter should be resolved through the application of the Cestui Qui Trust Act. The Cestui Qui Trust Act is not codified within the Ohio Revised Code and appears to be a rule of law that was created in England during the 17th century.